236 P.2d 1026

**STATE TAX COMMISSION et al. v. EL PASO NATURAL GAS CO.**
No. 5245.

Supreme Court of Arizona.
Oct. 29, 1951.

44

Fred O. Wilson, Atty. Gen., Perry M. Ling, Asst. Atty. Gen., for appellants.

Knapp, Boyle, Bilby & Thompson, of Tucson, and Morris & Malott, of Globe, for appellee.

PER CURIAM.

This appeal, by the State Tax Commission of Arizona, is from an injunction restraining the commission from collecting or attempting to collect any privilege sales taxes from the appellee, El Paso Natural Gas Company. The State Tax Commission will hereinafter be referred to as the commission, and the El Paso Natural Gas Company as the company or appellee.

The facts, briefly stated, are these:

The appellee is principally engaged in the transportation of natural gas through its interstate pipelines originating in New Mexico and Texas and passing through Arizona to California. Its pipelines are tapped for the sale of gas to fifteen consumers in Arizona—five public utilities, four municipalities, the U. S. Army, three copper companies, and two industries allied with the copper business. In April of 1947, the commission sent its accountant to the head office of the company in El Paso, to make an audit of appellee's books for the eleven-year period involved in this suit (January 1, 1936 to December. 31, 1946) preparatory to assessing sales tax for sales made to the Arizona consumers.

The auditor wrote to the company's general manager under the date of April 18,

1947 that "they (Commissioners Moore and Hunt) would be glad to have you come up and talk this matter regarding the audit over with them". A tentative date for this preliminary talk was set for the first week in May, but this was later changed to May 13, at the request of the company's representatives. Their attorneys, Honorable Sam H. Morris and Cleon T. Knapp, appeared on May 13, at the commission offices in the capitol building at Phoenix and had a general discussion in the private office of one of the commissioners. Two commissioners, Chairman Joe Hunt and member Thad M. Moore, and the company's attorneys were the only persons present at this conference. Counsel presented their views why the company was not liable for the tax, but suggested a compromise by offering to pay the tax for the previous three years, in order to avoid litigation. No agreement or conclusion was reached and another conference was held on May 19, under the same conditions and with the same parties present.

On June 9, 1947, the commission notified the company that a purported assessment had been made against it covering the eleven-year period for $277,727.26 and a formal hearing could be had if they requested it within ten days. The company made timely request for a hearing but was then told that the assessment was final as of June 9, 1947 and that it had been given a hearing on May 13, 1947.

The sole question necessary to determine this appeal is whether the company was granted a public hearing as required by section 73–1316, A.C.A.1939. In other words did the informal discussion of May 13, 1947, constitute a public hearing?

The company had never previously filed a sales tax return with the commission and section 73–1316, supra, provides: "If any person required to file a return under the provisions of this article fails or refuses to make a return, the commission shall proceed in such manner as may seem best, to obtain facts and information on which to base the assessment of the tax * * *. As soon as the commission has had time to procure such information *they shall hold a public hearing for the purpose of ascertaining and assessing the amount of tax payable by such person*. They shall give such person not less than ten (10) days notice in writing of the time and place of holding such hearing, * * *. The assessment of the tax against such person, after such hearing, shall be final as to any person who fails or refuses to file a return." (Emphasis supplied.) Section 73–1318, A.C.A.1939, provides that if any person having filed a return is aggrieved by the assessment, he may pay under protest and request a hearing from the commission. After the hearing he may then file a court action against the commission to reverse its decision.

This court in Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz.

77, 191 P.2d 169, held that the commission in conducting a hearing, under the provisions of the Income Tax statutes, was acting in a judicial or quasi-judicial capacity. The same reasoning and conclusion reached in that case must be reached in this matter with regard to the hearing provided for in section 73–1316, supra.

■ An administrative body can act in a judicial or quasi-judicial capacity only when it is formally convened with a quorum present. State ex rel. Baria v. Alexander, 158 Miss. 557, 130 So. 754; Burgin v. North Carolina State Board of Elections, 214 N.C. 140, 198 S.E. 592. How can it be claimed that the informal discussion in the private office of one of the commissioners could constitute the formal hearing required by law? The fact that a majority of the members of the commission were present at the discussion could not cure this defect and turn, the informal discussion into a formally convened session, as they were not purporting to act as a quasi-judicial body. The statute involved makes it imperative that a legal hearing be held in order to protect the rights of the taxpayer.

■ Section 73–1316, supra, provides that the commission shall hold a "public hearing". The courts have defined what constitutes a public hearing as a formal proceeding based upon notice to the parties with the right to introduce evidence, to hear and examine the opposing parties' witnesses, and to have the order based on the evidence presented. Alabama Power Co. v. City of Fort Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337; Farmers' Elevator Co. v. Chicago, R. I. & P. Ry. Co., 266 Ill. 567, 107 N.E. 841; In re Securities and Exchange Commission, 2 Cir., 84 F.2d 316. It is manifest that the informal discussion of May 13, 1947, in the private office of one of the commissioners is not such a public hearing as will qualify under this definition. Neither its secretary nor a stenographic reporter were present, no evidence was presented, no witnesses called or examined by either side; at most it was merely an informal discussion where the parties presented their views. As a matter of fact the record shows the company's representatives had not at that time seen the audit report.

■ The statute also requires at least ten days' written notice to be given the person of the time and place for holding the hearing. It is practically conceded by the commission that the required notice was not, given, but they attempt to get around it by asserting the appellee has waived this right. A waiver is a voluntary and intentional relinquishment of a known right. Southwest Cotton Co. v. Valley Bank, 26 Ariz. 559, 227 P. 986; Guarantee Title & Trust Co. v. Babbitt Bros. Trading Co., 47 Ariz. 47, 53 P.2d 734. It would be unreasonable to hold that the appellee intentionally and voluntarily waived this right because of the appearance of its attorneys at an informal conference called to discuss the proposed assessment. There

is no expression or conduct from which a waiver may be implied. On the contrary the appellee's reply to the commission's notice that an assessment had been made, shows an intention on its part not to waive the written notice, by requesting it be given the required notice and an opportunity to appear at a public hearing.

Finally the records of the commission clearly indicate that no hearing was held or intended by the discussion of May 13, 1947. Almost a month after the purported hearing, the commission on June 9, 1947, wrote the appellee informing it of the assessment and the amount thereof and goes on to say: "Should you desire a hearing relative to this assessment, request for such hearing must be made within ten days following receipt of this notice of assessment. If no such request is made within the time prescribed the assessment will become final." Also, page 350 of the minute book of the commission contains the purported minutes of the so-called hearing of May 13, 1947, and it states that the attorneys "appeared * * * to discuss the proposed assessment * * *."

We express no opinion as to the validity of the tax involved. We hold only that this purported assessment is null and void because the commission completely failed to follow the procedure set out in section 73–1316, supra.

Judgment affirmed.

DE CONCINI, J., having announced his disqualification, the Honorable FRANCIS J. DONOFRIO, Judge of the Superior Court of Maricopa County, was called to sit in his stead.