HYSON, et al. v. MONTGOMERY COUNTY COUNCIL, et al.

[No. 91, September Term, 1965.]

*Decided February 11, 1966.*

*Concurring opinion filed March 29, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Rita C. Davidson* for appellants.

*Robert L. Burchett, Assistant County Attorney,* with whom were *Robert G. Tobin, Jr., County Attorney,* and *Douglas H. Moore, Deputy County Attorney,* on the brief, for Montgomery County Council, part of appellees; and *James R. Miller, Jr.,* with whom were *Miller, Miller & Canby* on the brief, for Capital Beltway Properties, Inc., other appellee.

PRESCOTT, C. J., delivered the majority opinion of the Court. BARNES, J., concurs in the result. Concurring opinion at page 77, *infra.*

Appellants, apparently in an effort to be certain they have overlooked nothing that may aid them, have assigned 10 alleged errors some of which overlap. I, II, III, IV and VI all relate to purported illegalities in the hearing before the Montgomery County Council, sitting as the District Council (Council); hence, in order to conserve time and space, we shall consider them collectively, and add facts, when and if desirable.

## I, II, III, IV and VI

Like the replays of the "I Love Lucy" series, some of appellants' contentions have been before this Court on a number of occasions: lack of due process in the hearing before the Council of June 10, 1964; failure by the Council to comply with statutory provisions; abuse of discretion by the Council in failing "to remove irrelevant and prejudicial" material from the record; and improper conduct by one member of the Council.

Making these allegedly horrendous illegalities more specific, they boil down to a claim (a) that a hearing on a petition for reclassification is quasi-judicial in character, and, therefore, appellants were entitled, as a matter of right, to cross-examine the witnesses produced by the petitioner; (b) that Section 104-39 (b) of the County Code was violated, because the Council put a time-limit of one hour on each side at the hearing (although the record was left open for 10 days so that any interested person could supplement it); (c) that the Council erroneously considered exhibits of petitioner which showed possible or purported improvements to be erected on the subject property; (d) that the Council failed to comply with Section 72-84 of the local Code (1960) in not having a recommendation from the Maryland-National Capital Park & Planning Commission; and (e) that one member of the Council stated that a traffic situation referred to by a witness was "temporary" in nature.

We consider first the most important question involved in the appeal: the alleged denial of due process at the hearing before the Council. We think this question as posed necessarily includes a consideration of whether or not the existing statutes

and/or regulations required that appellants be afforded the opportunity to cross-examine at the hearing. The hearing opened with Councilmen Wilson, Floyd, Hiser and Williams present, and Councilwoman Diggs came in later. Mr. Miller, representing the applicants, made a statement. He pointed out that he was not soliciting conditional zoning, but the owners had a long-term lease with the A. & P. Tea Company for a portion of the property in accordance with an exhibit subject, of course, to reclassification. Mr. Parthemer, Assistant General Superintendent of the A. & P. Tea Company, testified his company had sought a suitable location to serve this community (the neighborhood of the subject property) for five years; he confirmed the lease in accordance with the exhibit, which was an architect's drawing of a proposed building. Mrs. Davidson, an attorney representing the opponents, objected to this exhibit and was informed that she could object "when it comes time for the opposition." After offering Mr. Lebling, a real estate expert and examining him, Mr. Miller asked: "Are there any questions of Mr. Lebling?" No questions were asked. The same procedure occurred with Mr. Ditto, another real estate expert. Other witnesses were offered and their testimony taken, but it is unnecessary to set it forth here. When the opposition took over, Mrs. Davidson stated that she "would first like to request the right of cross examination on the material that has already been presented." She was informed, "it hasn't been the practice." She proceeded to offer her witnesses and the case, at her request, was held open for 10 days to offer "additional evidence" in writing. (It is interesting to note that petitions opposing the reclassification were offered by the opponents containing many names. Quite a number of the signers were residents of the District of Columbia and even Virginia.) Although the usual time of rezoning hearings in Montgomery County is limited to ½ hour to a side, in this case one hour to each was granted. Mrs. Davidson offered much testimony and the meeting was adjourned at 10:50 p.m., with the record showing only one opposing person not being heard, a Philip Marcus, whose address was not given. He was not offered by Mrs. Davidson, but seems to have been acting in an individual capacity. We were informed that his objections were reduced to

writing and filed within the ten days. The above, for our present purposes, is a sufficient statement of what occurred at the hearing.

The appellants, as noted above, contend that the Council, at the hearing, was acting in a quasi-judicial capacity; therefore the hearing was required to be a "trial type" one, at which they were entitled, as a matter of right, to cross-examine the appellees' witnesses. The appellees counter by arguing that the Council was acting in a legislative, or quasi-legislative, capacity; consequently the hearing required was not a trial-type one, and appellants were not entitled to cross-examination as a matter of right; and, even if they were so entitled, they had waived the same.

As considerable uncertainties encompassed within the realm of these respective claims seem to exist, we deem it appropriate to give the contentions a somewhat thorough, even though rather lengthy, consideration.

Before considering our present question specifically, we deem a few generalities appropriate. At the outset, we point out that the record does not present a clean-cut denial of the right to cross-examination. There was no request to cross-examine any specific witness or witnesses, either at the time any witness was testifying, or when it came time for the presentation of the opposition. There were no questions propounded, or requested to be propounded, when Mr. Miller, who was conducting the proponents' case, asked, "are there any questions of Mr. Lebling?" And the same inquiry was made, with no questions asked, or requested to be asked, at the conclusion of Mr. Ditto's testimony. These were experts offered by the applicants and certainly were two of their most important witnesses. The only reference to cross-examination was made after the applicants had concluded their case, and the opponents had begun theirs. Also, the request when it came, "I would first like to request the right of cross-examination *on the material* (italics ours) that has already been presented," cannot be said to be very specific in nature. It is a matter of common knowledge that witnesses at zoning hearings, generally, are not summoned, and are not required to remain until the hearing is concluded. There was no showing as to what witnesses of the proponents, if any, still

remained at the time the request was made, and, as previously stated, no request to cross-examine any specific witness. We think the record, at most, discloses a partial, but very slight, denial of the right of cross-examination to the appellants at the hearing.

It is elementary that governmental bodies, tribunals, agencies, boards (and by whatever other appellations they may be known), and officials, in the performance of their public duties, exercise functions that are divided into three general categories: executive, judicial, and legislative. (As no question is here involved concerning executive powers, no further reference will be made thereto.) And functions, when they are not purely and completely judicial or legislative in nature, but have qualities or incidents resembling them, are referred to as quasi-judicial or quasi-legislative.

Up to the present time, no one has been able to delineate, with precision and accuracy, an exact formula for determining the line of demarcation between the differences between legislative and judicial functions. These differences, on occasions, are particularly difficult of determination when mixed, blended, or combined functions are given, and exercised by, the same official, board, or agency, 1 Davis, *Administrative Law Treatise,* §§ 1.09, 7.03, which is frequently the case. Compare Cooper, *State Administrative Law,* Ch. 1, Sec. 1. (More will be said concerning this later.) And when the same official, board, or agency performs, in one proceedings, quasi-judicial and quasi-legislative functions, it is misleading and inaccurate to characterize the whole proceedings as judicial or legislative in nature. Davis, *op. cit., 7.03.*

*It should be carefully noted and remembered that the holding in any zoning or rezoning case, here or elsewhere, cannot be accurately appraised without a knowledge and consideration of the constitutional and statutory provisions and the local laws and zoning regulations prevailing at the time of the decisions, below and here.* We know of no jurisdiction in Maryland having zoning where the laws and regulations are identical; hence each decision of this Court must be considered in the light of the laws and regulations of the jurisdiction from which the appeal emanated.

This appeal comes from Montgomery County; consequently, our holdings herein must be limited to that county, except insofar as they also necessarily apply to other jurisdictions.

(a)

We return to a consideration of our immediate questions. Apparently, Montgomery County in zoning matters has never acted under the authority given by Code (1957), Article 66B (this statement does not necessarily apply to incorporated cities in that county, a question not here involved). The county originally derived its zoning power by Ch. 448 §§ 20, *et seq.*, of the Acts of 1927. These sections provided that the County Commissioners acting as a legislative body had a right to zone or rezone a certain portion of the county after a "public hearing." It will not be necessary to trace the entire history of zoning in the county here; we shall set forth the pertinent provisions of the statutes and regulations prevailing at the time of the hearing involved herein later.

We have repeatedly stated and held that the *actual acts of zoning* and *rezoning* are legislative or quasi-legislative in nature. A few of the cases so holding are: *Bishop v. Bd. of Co. Comm'rs*, 230 Md. 494; *Board v. Levitt & Sons*, 235 Md. 151; *Reese v. Mandel*, 224 Md. 121 (adopting a comprehensive plan) ; *Wakefield v. Kraft*, 202 Md. 136; *Md. Adv. Co. v. City of Baltimore*, 199 Md. 214; *Mandel v. Bd. of Co. Comm'rs*, 238 Md. 208. These cases are in full accord with the holdings elsewhere in this country and the text-writers. We have no desire to recede from these holdings on the subject, and do not; on the contrary we reaffirm them. (Of course, the legislative authorities of the municipalities have no inherent or plenary authority to exercise the police power of the state; they merely exercise such police power as is delegated to them by the Legislature.)

However, this does not mean that the Legislature (or the Council by regulation adopted pursuant to proper authority) cannot prescribe, within lawful and constitutional limitations, the mode of conducting the hearing on a rezoning application, cannot provide for the making of a record at such hearing, or cannot require that such an application "shall be determined on the basis of the evidence of record," and shall be approved or disapproved on the merits.

At the time of the hearing, June 10, 1964, the laws and regulations relating to Montgomery County provided that the Council shall hold "a public hearing" (Mtg. Cty. Code [1960], §§ 72-84, 104-39), at which "any interested party shall have the right to submit oral or written testimony," and "a complete stenographic report * * * and a typewritten transcript thereof" shall be made. Also that transcript, the petitioners' application, the zoning map, and all exhibits were to be considered as parts of the record. And "evidence [offered at the hearing] which is immaterial, irrelevant, or unduly repetitious may be excluded." And § 104-40 and the amendment thereto, Laws of Montgomery County, 1962, p. 143) the "application for a map amendment shall be decided on the basis of the evidence of record," and approved or disapproved on the merits. (For the main part, these provisions seem to have become law in 1953. See Mtg. Cty. Code (1955) §§ 107-38, 107-39.) Further, any "person aggrieved" was given the right to appeal to the Circuit Court which was granted the power to affirm the decision of the Council or to reverse such decision "as justice may require," if it were "not in accordance with the law." A further appeal was provided to the Court of Appeals. Code (Mtg. Cty. 1960), § 72-85.

In the light of these provisions, we must determine what is the type of public hearing which the Council was required to afford, and the nature of the functions exercised by the Council at such hearing, before the formal and final act of reclassifying the property or the denial of the application.

It is clear to us, from the general law elsewhere and our previous decisions, that the provisions set forth above make it improper and inaccurate to characterize the whole proceeding at the hearing held by the Council when considering an application for reclassification and its action of denying or granting reclassification as quasi-legislative in nature or quasi-judicial in nature. The above provisions, without question, required the members of the Council to resolve disputed questions of adjudicative facts (as contradistinguished from legislative facts or judicial *action*) concerning particular parties. Davis, *op. cit.*, § 7.03; *Board v. Levitt & Sons, supra.* (Professor Davis, in § 7.02, *op. cit.*; states that adjudicative facts are "roughly" the

kind of facts that go to a jury in a jury case.) And, when the Council was considering and determining these adjudicative facts concerning particular parties, it necessarily was performing a quasi-judicial function, even though its final action, in granting or denying the reclassification which was required to be based upon its findings of adjudicative facts, was quasi-legislative in character.

A review of the previous decisions of this Court renders the above obvious. In *Md. Adv. Co. v. City of Baltimore,* 199 Md. 214, the Court, referring to the action of the Board of Municipal and Zoning Appeals in approving or denying applications to erect billboards, stated: "The legal question here is whether this quasi-legislative and quasi-judicial determination was 'an unreasonable, arbitrary, or unequal exercise of power.'" In *Albert v. Pub. Serv. Commission,* 209 Md. 27, the Court pointed out that, apart from statute, the necessity of a hearing in an administrative proceeding depends on the character of the proceeding and the nature of the interest of the person seeking relief. During the course of the opinion, the Court said: "The Commission in performing this function [determining the need for additional taxicabs] * * * acts in a legislative or an administrative-legislative capacity and not in a judicial or quasi-judicial capacity. Therefore, due process does not require a hearing." This was true even though hearings were required to be held by the Commission under other sections of the law. Compare *Eliason v. State Roads Comm.,* 231 Md. 257. Also, in *Schultze v. Montgomery Co. Bd.,* 230 Md. 76 (not a zoning case), the Court of Appeals said:

> "In so doing, the board is, of course, determining facts, and accordingly is exercising a quasi-judicial function. Many cases since *Dal Maso v. County Comm'rs,* 182 Md. 200, * * * have made it clear that notwithstanding anything therein said, administrative bodies or officers may exercise such power. See, for example, *Hecht v. Crook,* 184 Md. 271, 277, * * *; *Heaps v. Cobb,* 185 Md. 372, * * *; and *Heath v. M. & C. C. of Baltimore,* 187 Md. 296, * * *."

In *Board v. Levitt & Sons, supra,* a zoning case with provisions of law in regard to hearing and determination on the

record very similar to those of the instant case, we explicitly stated:

"We have repeatedly held that the action of zoning or reclassification of zoning is a function that is legislative in nature. However, this does not prevent the Council from making *administrative* findings of fact, drawing administrative inferences, and arriving at administrative conclusions and decisions, when hearing an application for rezoning, and the statute clearly anticipates such action. Cf. *County Council v. Egerton,* 217 Md. 234. 1 Am. Jur. 2d, *Administrative Law,* § 92. After making its administrative findings of fact, etc., the Council is then in a position to exercise its legislative function of granting or denying the petition for reclassification."

Also in *Mandel v. Bd. of Co. Comm'rs, supra,* we said:

"The appellants fail to distinguish, however, between the function of the Board as a party in an *adjudicative* proceeding (or in the language of the Administrative Procedure Act * * * a contested case) and its position as a *legislative* body. * * *. The difference between the legislative, or rule-making, power of a body such as the Board, and its position in contested cases, is set forth in the definitions of 'rule' and 'contested case' in § 244 of the *Administrative Procedure Act.*" (Emphasis added.)

(We do not mean to indicate that the Council is included in the definition of "agency" in Code [1965 Repl. Vol.], Article 41, § 244[a], but refer to the Act only for the purposes of analogy. Cf. *Character Committee v. Mandras,* 233 Md. 285.)

In *Woodlawn Area Citizens Ass'n, Inc. v. Bd. of Co. Comm'rs,* 241 Md. 187, we again pointed out that although the action of the Council in Prince George's County "in rezoning in individual cases is ultimately legislative, it is clear that in performing this delegated and restricted function it acts largely as an administrative or adjudicatory agency." See also, Oppenheimer (now Judge Oppenheimer), *Administrative Law,*

2 Md. L. Rev. 185, wherein the distinction between quasi-legislative and quasi-judicial functions, even when performed by a single agency, is clearly pointed out.

We, therefore, as previously indicated, have no hesitancy in holding that the statutes and regulations, set forth above, conferred quasi-judicial functions upon the Council in making its determination of facts at the hearing. See, in addition to the authorities cited above, 1 & 2 Am. Jur. 2d, *Administrative Law*, §§ 92, 161, 415.

The authorities seem to be in accord that when an administrative board or agency is required to hold a public hearing and to decide disputed adjudicative facts based upon evidence produced and a record made, that a reasonable right of cross-examination must be allowed the parties. Professor Davis, *op. cit.*, § 7.05, states the proposition in this manner: "When the adjudicative facts are in dispute, our legal tradition is that the party affected is entitled not only to rebut or explain the evidence against him but also to 'confront his accusers' and to cross-examine them" [1] We have no intention of attempting to promulgate a comprehensive rule respecting the type or the amount of cross-examination that the Council must provide at hearings on applications for reclassification. The rationale of the cases and authorities is that reasonable cross-examination, which is required for a full and true disclosure of the facts, having due regard to the circumstances of each particular case, the nature of the proceedings, and the character of the rights which may be affected by it must be permitted; and that is as far as we are required to go at this time.

---

1. See also, 1 Greenleaf, Evidence (14th Ed.) § 446; Wadell v. Bd. of Zoning Appeals, 68 A. 2d 152 (Conn.); Branche v. Bd. of Trustees, 141 N. Y. S. 2d 477; 2 Am. Jur. 2d, Administrative Law §§ 416, 424; State Tax Comm. v. El Paso Natural Gas Co., 236 P. 2d 1026 (Ariz.); Davis, op. cit., § 7.02. And compare, 1 Rathkopf, The Law of Zoning & Planning, §§ 8-31, 43-17; Hecht v. Monaghan, 121 N. E. 2d 421 (N. Y.); V Wigmore, Evidence (3rd Ed.) § 1367; Cohen, Some Aspects of Maryland Administrative Law, 24 Md. L. Rev. 1; the numerous State Administrative Procedure Acts (and the Federal Act, 5 U.S.C. § 1006 [c] ) where cross-examination is specifically permitted; and Benjamin, Administrative Adjudication in the State of New York, 196.

Although this Court does not seem to have been called upon previously to decide the precise question being discussed, its previous decisions seem to foreshadow the result reached above, notwithstanding the language used in *Overton v. Board of Co. Comm.*, 223 Md. 141, at page 146. The actual holding therein was that "there was no request by any appellants for that which they now claim was denied them [the right to cross-examination] * * *." See also *Temmink v. Bd. of Zoning Appeals*, 205 Md. 489, 497, and *Severn v. Baltimore City*, 230 Md. 160, 172, wherein the author of *Overton* states: "Since our holding is based on waiver, it is not to be taken as implying our approval of any administrative practice in contested cases which would * * * deprive the claimant of the opportunity for cross-examination * * *." (not a zoning case.)

Having decided that appellants were entitled to reasonable cross-examination if it were properly asked for and denied, what does the record actually show in this respect? (We note in passing that Montgomery County seems to be the only jurisdiction in the State, whose zoning authorities are required to decide adjudicative facts, which does not provide for cross-examination.) We shall not repeat what we have already stated in that regard. After examining and re-examining the record, we are unable to find a denial of appellants' request to cross-examine any specific witness or "material." (The applicants did not request or receive the right to cross-examination, both sides being treated exactly the same.) Consequently, we are unable to hold that error on this score was committed. One of the primary purposes of requiring an objection in a trial court or other reviewable proceeding is to afford that court or the body conducting the proceeding an opportunity of correcting possible errors, thereby saving time and expense. We hold that no prejudicial error has here been shown. Of course, the question could have been turned upon an assumption that reasonable cross-examination was required and a finding that the record failed to disclose a denial thereof, but, since the question was raised and discussed in the briefs by both sides, also argued by them at the hearing in this Court, and we consider it one of significance, we preferred to treat it as we have above.

## (b)

Mtg. Cty. Code (1960), Section 104-39(b), as amended, provided, in part, as follows: "Any interested person shall have the right to submit oral or written testimony at the hearing [held on the question of zoning or reclassification]." The "interested" persons mentioned therein are, we think, the same class of persons who can qualify as "aggrieved persons" under our decisions relative to qualifications to be entitled to appeal. It scarcely can be seriously argued the legislative body intended that any and all persons, irrespective of where they lived or owned property, or the nature of "interest" they might have, such as the signers of the petitions, offered by appellants, living in the District of Columbia and Virginia (the subject property is located a very considerable distance from the boundaries of that State and District), were entitled to be heard. We have already pointed out that, generally, administrative agencies are not bound by the technical rules of evidence and all of the procedures afforded in a trial in a court of law, provided such agencies observe the basic rules of fairness to parties appearing before them. In the instant case, the proponents and opponents were treated exactly alike, each side being allowed one hour to present its evidence at the hearing, and an additional ten days to file supplementary written evidence. This additional evidence was made a part of the record, which was open to inspection by the parties and the public.

Although the record discloses that the President of the Council announced he was "sorry we didn't get a chance to hear everybody tonight," the record itself merely shows that only one person, Philip Marcus, was present and would have liked to have testified. He lived about a block from the subject property, and was not represented by Mrs. Davidson. His written statement of some 6 pages in the record extract was accepted and filed about 3 days later. He is not a party to this appeal.

There can be little doubt that the zoning authorities, in conducting their hearings on applications for reclassification, where frequently individual emotions run high (Cf. 2 Rathkopf, *The Law of Zoning & Planning,* § 43-19), must be recognized as having the discretion to regulate, reasonably, the length of time afforded parties to present their evidence. Whether constitu-

tional or statutory requirements, or the elements of fair play and impartiality have been violated in this regard should also be decided on a case to case basis. Compare *NLRB v. Donnelly Garment Co.,* 330 U. S. 219. Here, the record fails to show that the appellants (or any one of them) were unduly or unlawfully hampered or restricted by being allotted one hour to present their testimony at the hearing and ten days for filing additional written evidence, the same treatment that applicants received. In fact, none of appellants requested more time at the hearing. They were fully apprised of the applicants' claims, and they were given an opportunity to refute those claims, to offer their own evidence, and to argue (we have previously considered the contention relative to cross-examination). There was no intimation that applicants filed, during the 10 day period, evidence which the appellants did not have an opportunity to answer; indeed, the record indicates that no evidence was offered by applicants subsequent to the hearing. In any event, appellants made no objection to the time allotted, and made no attempt to have the record show that their cause was harmed thereby. We find nothing under this heading to show any prejudicial denial of constitutional or statutory rights. Compare *Greene v. McElroy,* 360 U. S. 474, 496.

### (c)

This assignment of error gives us little difficulty. Appellants complain that they were not given the right to object to the introduction of a site plan and architect's rendering of applicants' proposed use of the subject property, and the Council's refusal to remove the same from the record. It is universally acknowledged that administrative bodies, ordinarily, are not bound by the strict rules of evidence of a law court. In addition, the record makes it clear that applicants and the Council fully realized that the Council could not grant conditional rezoning, and the applicants were making no request for such rezoning. The record also makes it plain that the Council gave little weight to such exhibits—the president expressly so stating as a fact. No claim is made that the site plan and architect's drawing did not depict a permitted use under the reclassification requested; consequently, it was entitled to be considered by the Council as showing one of the possible uses of the property, if the reclassification were granted.

### (d)

This contention, also, gives us little difficulty. Appellants urge that the Council's action was invalid because the Council failed "to comply with the statutory requirement [Mtg. Cty. Code (1960), Section 72-84] that there be a recommendation or report from the [Md.-Nat'l Capital Park & Planning] Commission in the file." We shall not discuss the details of the argument, for it is based upon a consideration of the 1960 local code, Section 72-84, and not upon the amendment thereto in Ch. 630 of the Acts of 1963. (A later amendment is contained in Ch. 624 of the Acts of 1965, not here relevant.) Moreover, Exhibit 15 plainly shows that the Council had a recommendation from the Commission, dated April 7, 1964, approving the reclassification; and there is nothing in the recommendation (E. 49) showing that it was conditional (assuming, without deciding, that this would be of significance) as claimed by appellants.

### (e)

The contention here is that Councilwoman Diggs invalidated any action taken as a result of the hearing by stating that a traffic congestion situation mentioned by a witness at the hearing was "temporary" in nature while a road improvement was in process. There can be little doubt that administrative officials, in the conduct of their proceedings, should conduct such proceedings with impartiality and proper decorum, and they should in cases of this nature base their conclusions upon evidence as distinguished from opinions of individual members. *Montgomery County v. Walker,* 228 Md. 574; *Temmink v. Bd. of Zoning Appeals,* 205 Md. 489. Although the remark was, perhaps, unfortunate, or, possibly, "inappropriate," as it was characterized by the trial judge, we are unable to find that the Councilwoman had a personal interest in the outcome of the hearing, or that the remark had any serious or controlling influence on the final action of the Council; hence, we hold that it did not invalidate the Council's action.

After consideration of all of appellants' above contentions, we hold that the hearing before the Council was fairly and impartially conducted, and, although cross-examination should have been allowed if properly requested, the slight denial here

(if it can properly be termed a denial under the circumstances) has not been shown to have prejudiced the protestants' cause.

## V

Appellants argue, and for the purposes of determining the present question it is conceded, that an affirmative vote of four members of the Council was necessary to grant the reclassification. Mtg. Cty. Code (1960), §§ 72-81, 104-41.

Section 72-81 required that three members of the Council attend the hearing; four were actually present during the entire hearing, and a fifth came later. Subsequent to the hearing, all seven members voted favorably to prepare the resolution to grant the reclassification. Still later, six members voted formally and favorably on the resolution, with one member, who had attended the entire hearing, being absent. Of these six members, three had been present during the entire hearing, one certified she had familiarized herself with the record before casting her vote, and the other two voted favorably without stating whether they had, or had not, read the record. It will be noted that no vote was, at any time, cast against the resolution.

However, appellants argue that this Court's decision in *Clark v. Montgomery County*, 235 Md. 320, held that no member of an administrative body, which is required to hold a public hearing, could vote upon final action of that body unless the member attended the hearing. The holding in that case was that under the then relevant provisions of the law "at least enough members to constitute a quorum" of the County Board of Appeals, should be present when the Board held its public hearings required by law. A quorum of the Council was present at all times during the public hearing herein. *Younkin v. Boltz*, 241 Md. 339, explains the holding in *Clark* quite fully. We shall not repeat it here.

We think, and therefore hold, that the three votes of the members who attended the entire hearing plus the member who had familiarized herself with the record were sufficient to show four favorable votes for the resolution, without further consideration of the one member who was absent, or of the two who voted favorably without signifying whether they had, or had not, read the record. We may add, however, that this

Court would be very reluctant to hold that a public official is *presumed* not to have performed his duty properly. Cf. *Dal Maso v. Board of Co. Comm'rs,* 238 Md. 333, 336.

## VII, VIII, and IX

These contentions allege an insufficiency in the evidence to show error in the comprehensive rezoning, or change of conditions, that the action of the Council was arbitrary and capricious as not being based upon any relationship to the general public interest in promoting the "health, safety, or welfare of the community," and that the action was illegal as constituting invalid spot zoning. They may be conveniently considered together.

The subject property consists of two contiguous parcels of land, containing slightly in excess of four acres, located in the southeast quadrant of Georgia Avenue and Shorefield Road in Wheaton. Georgia Avenue is a main thoroughfare north from the District of Columbia, Silver Spring, and Wheaton; portions thereof bearing six lanes of traffic. The property is located less than a mile south of the intersection of Randolph Road and Georgia Avenue at Glenmont, and less than a mile north of the intersection of University Boulevard and Georgia Avenue at Wheaton, one of the most heavily traveled intersections in the State. At both of these intersections, there is considerable commercial property. Shorefield Road, north of the subject property running to the east, had been a country road with a pavement width of about 14 feet, but, at the time of the hearing, was being widened to 36 feet of paving on a 70 foot right of way to accommodate traffic to and from a large rather recently opened public park to the east, which will be mentioned later.

The subject property had been zoned R-90 (single detached residential) for many years, and the same classification was given it in the 1959 Zoning Plan for the Kensington-Wheaton Planning Area VII. Property east of Georgia Avenue immediately to the north, east, and south of the subject property was zoned R-90, but directly across Georgia Avenue to the west, the property of the Town and Country Restaurant was zoned C-1 (Commercial Local), and between January 7 and June 10, 1964, additional C-1 rezoning was granted just north

of the restaurant property. Also, after the 1959 Plan, a short distance to the north of the subject property on the east side of Georgia Avenue, a large tract was rezoned to R-30 (apartments) and was being developed as such. The property immediately to the east was wooded and vacant. There were but 5 houses on Shorefield Road, four of which were near the new public park consisting of about 500 acres, which was some 1200 to 1400 feet east of the subject property. To the south of the subject property, there was one single family dwelling, vacant land, and a nursing home. (Chronologically, the events in this case have not been developed in the record with the accuracy and precision of many cases presented to this Court, which, of course, renders it difficult to evaluate the proper weight that the zoning authorities were entitled to give to such events.) There is one exhibit showing that on May 19, 1963, a Sunday, 4783 automobiles traveled Shorefield Road, apparently traveling to the new park, with the peak hour showing 750 vehicles.

It would unduly prolong this opinion to set forth in detail each and every act of all the parties and all of the motions and reports filed in the proceedings. We shall outline what we consider the most important events.

The applications for reclassification of the two adjoining parcels were filed in November, 1963. Apparently recognizing that zoning problems existed in the area of the subject property, the Montgomery County Planning Board, or on about January 29, 1964, directed its Staff "to make a special study of the area adjoining Georgia Avenue in the vicinity of Shorefield Road, giving specific attention to the special problems of the area * * *." The Staff made its report to the Board on March 30, 1964. This report stated that there had been little development east of Georgia Avenue (zoned R-90) between Henderson Avenue (just south of Shorefield Road) and Randolph Road in recent years (other testimony showed that but 3 dwellings had been constructed in the last 8 years, none since 1959), except for the new apartments (mentioned above). The Staff thought the R-90 land could be expected to be developed as single family detached dwellings except the owners considered the frontage on Georgia Avenue to be too valuable to be

used for that purpose; that Shorefield Road carried a heavy load of traffic to the new public Regional Park, and probably would be called upon to accommodate more, so, if single lots were placed on each side of this road, it would materially affect the road's function as the principal park entrance and make access to the lots difficult; and that the highly fragmented pattern of ownership in the area north of Shorefield Road, consisting mainly of strips of narrow frontages on Georgia Avenue and depths of over 1000 feet, would make it necessary to assemble a number of properties "in order to develop the land in any manner, whether in single family lots or in any other way." The Staff recommended a rezoning of the frontage on Georgia Avenue to a depth of approximately 500′ to R-T (Town House) zoning and the remainder of the property, some 37 acres, changed to R-60. The report stated that if its recommendations were approved, on both sides of Shorefield Road, subdivision would be accomplished by clusters surrounding cul-de-sacs, with access from other streets." The report suggested that applicants herein reapply for the R-T zoning for a part of the property and R-60 or R-90 for the balance.

The Planning Board did not adopt its Staff's recommendations, but on April 7, 1964, after a "consideration of the completed study," it felt that the subject property would be stabilized as a result of its reclassification to the C-1 zone, and for "these and other reasons in the general public welfare," it voted to rescind its previous action on the subject applications (which had recommended denial) and recommended approval thereof.

This brings us down to the hearing on June 10, 1964, and much of what occurred there has already been related. Mr. Miller, as one of the owners testified and conducted the hearing for the applicants, and four real estate experts were offered by the applicants as well as a number of exhibits. In addition to what has been previously narrated, testimony was offered to show that additional water and sewer facilities were under consideration and could be expected to materialize before long; that there was need for a local shopping center and the subject property was suitable for such use; that the amount of traffic at the intersection of Georgia Avenue and University Boulevard was enormous; and that the Commission estimated that 50,000 per-

sons per week entered the Regional Park by way of Shorefield Road. Of course, the opponents offered testimony and exhibits, which we have considered, but not set forth in detail, for, when the Council reclassifies property and its action is challenged, our duty is not to zone or rezone but to examine the record to see if the whole evidence made such action "fairly debatable," which has become the traditional standard in Maryland since the expression was used in the landmark case of *Euclid v. Ambler Co., 272* U. S. 365.

After considering and weighing the testimony and exhibits the County Council, sitting as the District Council, voted to grant the reclassification. It based its action upon both error in the 1959 Kensington-Wheaton Master Plan and change in the neighborhood.[2] We shall not consider the question of error, as we think there was sufficient evidence of change to make that question fairly debatable.

The Council is the official public body which grants or rejects petitions for reclassification of property in zoning matters. Once property is reclassified by the Council, its action is presumed to be valid, and it is incumbent upon those who attack the same to overcome the presumption. *Jobar Corp. v. Rodgers Forge,* 236 Md. 106; *Mettee v. County Comm.,* 212 Md. 357. Evidence to *justify* the expertise of the zoning authorities in granting reclassification does not have to be so strong as evidence that would *require* rezoning. It would serve no useful purpose to repeat, in detail, the evidence as we have outlined it above; hence, we shall not do so, but will say, as indicated above, that it was sufficient, in our opinion, to render its action in granting the reclassification fairly debatable.[3] What we

---

2. The case was appealed to the Circuit Court where the conclusions of the Council were affirmed. The appeal here followed.

3. We note that the applicants in presenting their case laid some stress upon an alleged value of their property as being too high to make it "economically feasible" to develop the same for "residential purposes." This "supposed" value of the property was necessarily based upon a rezoning thereof or the use thereof for one or more of the uses (other than dwellings) permitted in an R-90 zone. If based upon either, it finds little support of any great significance in the decisions of this Court (compare Marino v. City of Baltimore, 215 Md. 206), no claim being here made of a

have just said answers the contentions relative to public interest. If the evidence were sufficient to support the Council's action, which we have just held, the action could not result in illegal spot zoning or have been based upon no relation to the public interest.

X

This brings us to an end of an already lengthy opinion. This contention relates to a claim that the trial judge erroneously refused to admit testimony concerning matters which had occurred after the hearing. We shall not set forth the claim in detail; it is of little significance. Suffice it to say, we have considered it carefully and find no error in the trial court's ruling.

*Order affirmed, with costs.*

BARNES, J., filed the following concurring opinion.

I concur in the result in the case at bar and in *all of the holdings* set forth in the majority opinion. However, I cannot agree with the *dictum* indicating that the function of the Montgomery County Council, sitting as a District Council for the rezoning of two contiguous parcels of land, somewhat in excess of 4 acres located in the southeast quadrant of Georgia Avenue and Shorefield Road in Wheaton from the R-90 (single detached residential) zone to the C-1 (light commercial) zone is, in part at least, a "quasi-judicial" function rather than a legislative function, restricted by the provisions of the applicable Act of Assembly.

The majority opinion, well written and persuasive on this point, makes the best possible case for this proposition, but it does not convince me that the proposition is sound. Indeed, I think it is quite unsound, and while not productive of any harm in the case at bar, it will result in grave harm in the future if in some later case, it ultimately ripens into a general holding by the Court.

My views on this proposition are not unknown. I filed my first *caveat* to it in my dissenting opinion in *MacDonald v. Board*

---

denial of all reasonable use of the property. We have not set forth this evidence in the opinion, and, for the purposes of this case, have not considered it in reaching our decision.

*of County Commissioners of Prince George's County, et al.,* 238 Md. 549, 586-588, 210 A. 2d 325, 346-347 (1965). In that dissenting opinion I stated:

> "Another reason for upholding the action of the legislative body here is that it is a *legislative body,* and not a mere administrative organ. Zoning and rezoning is legislative in character; it is not quasi-judicial, administrative, quasi-legislative, quasi-executive, or anything other than legislative. Rathkopf, *The Law of Zoning & Planning* (3d ed.), Section 27; *Yokley, Zoning Law & Practice* (2d ed.), Section 83, and cases collected therein; 101 C.J.S. *Zoning,* Section 1 and cases cited."[1]

This warning was not heeded by the majority of the Court in *Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners for Prince George's County,* 241 Md. 187, 216 A. 2d 149 (1966). The majority in *Woodlawn* indicated that the rezoning function of the Board of County Commissioners for Prince George's County, sitting as a District Council, was "quasi-judicial" to such an extent that the doctrine of *res judicata* was applicable to the prior rezoning actions by the District Council. In my dissent in *Woodlawn* I sought to point out that the prior decisions of the Court did not require a holding that the rezoning function of the legislative body of the county, although beginning and ending as a legislative function by some mysterious means became "quasi-judicial" in the course of the exercise of that legislative function. On the contrary, it was, and is, my opinion, that Article IV, Section 1 of the Maryland Constitution and Article 8 of the Maryland Declaration of Rights of the Constitution and the prior Maryland cases, require a holding to the contrary. The reasons for this opinion are fully set forth in the dissent in *Woodlawn,* which contains an analysis of the apposite prior cases and those reasons and analysis need not be repeated here.

I am in agreement with the majority opinion that the General Assembly *may* place restrictions upon the exercise by the

---

1. Page 586 of 238 Md., page 346 of 210 A. 2d.

District Council of its zoning and rezoning powers, within established constitutional limitations. In rezoning applications a hearing may be, and in Montgomery County is, required. I would not suppose, however, that this "hearing" is basically other than the usual legislative hearing which as a matter of general practice, legislative bodies conduct (although not constitutionally required to do so) in regard to legislation before them. The general practice of the General Assembly is to refer a bill to the proper committee which then gives notice of a public hearing on the merits of the proposed bill to which any member of the public is invited to attend. Although the testimony before such a legislative committee *may* be transcribed, the committee *may* allow cross-examination of witnesses, the committee *may* hear counsel for persons or groups either in favor or opposed to the proposed legislation, it has never been thought that these desirable procedural arrangements were other than matters of legislative grace and not matters of constitutional right. The same general type of hearing was intended by the General Assembly in zoning and rezoning matters which, as I have indicated, are *legislative in character*. The enabling legislation did make a hearing, notice and other procedural matters mandatory, but cross-examination of witnesses was not among those requirements. The District Council, as the local legislative body, *may* itself provide by ordinance, possibly by regulation or by permission *pro hac vice* in the particular proceeding, for these procedural matters but the procedural requirements only exist by virtue of the legislation, regulation or permission and not by virtue of any constitutional mandate. In the case at bar there simply is no legislative or other *requirement* that cross-examination of witnesses be permitted by the District Council and, in my opinion, no such requirement exists. The District Council did see fit to invite cross-examination on a limited basis and I agree that the issue of the requirement of cross-examination of witnesses is not raised in the case at bar, but I cannot see how any constitutional issue of due process of law can be raised in any case if the District Council should decline to permit it.[2]

---

**2.** In the majority opinion it is stated: "We note in passing that Montgomery County seems to be the only jurisdiction in

After referring to *dicta* in *Schultze v. Montgomery County Planning Board*, 230 Md. 76, 79, 185 A. 2d 502 (1962) and in *Kay Construction Co. v. County Council for Montgomery County*, 227 Md. 479, 486, 177 A. 2d 694 (1962) stating that the County Council in Montgomery County in rezoning cases

the State whose zoning authorities are required to decide adjudicative facts, which does not provide for cross-examination." It should be pointed out, however, that in Baltimore City zoning and rezoning are within the control of the City Council of Baltimore City and have not been further delegated to the Board of Municipal and Zoning Appeals. There is nothing in the Zoning Enabling Act, Code (1957), Article 66B, §§ 1-9, as amended (Act of 1927, Chapter 705, as amended) which requires that the testimony before the City Council be transcribed, that witnesses be sworn or that cross-examination be required. In fact none of these things occur. A rezoning ordinance is referred to the Zoning Committee of the City Council and the usual legislative hearing is conducted by that Committee. A report—either favorable or unfavorable—is then made to the City Council in regular course. The Zoning Enabling Act, as amended, does require a very specific notice to be given by publication, by posting and by mail to *all* persons whose names appear on the tax records as the owners of the property proposed to be changed. Code (1957), Article 66B, § 4. If more than 20% of the property owners in the area to be changed or within 100 feet of the perimeter of the change object to the proposed rezoning, a then favorable vote of all members of the City Council is required for the passage of the rezoning ordinance. Code (1957), Article 66B, § 5. The City Council makes no findings of fact, gives no reasons for its final action and preserves no records. Witnesses are not sworn and cross-examination is not permitted at the hearing. The only questions permitted or asked a witness at the rezoning hearing are those asked by the members of the Zoning Committee present. As I participated in many of these hearings as counsel when at the bar both on behalf of proponents and opponents, respectively, to various proposed rezoning ordinances, it never occurred to me that the procedure used was otherwise than constitutional and lawful and, indeed, the only practical method for the conducting of such hearings, Professor Davis to the contrary notwithstanding.

In administrative hearings before the Board of Municipal and Zoning Appeals of Baltimore City in connection with special exceptions or variances, or even in hearings involving the original jurisdiction exercised by that Board, there is no statutory or other requirement that there be cross-examination but the Board generally permits reasonable cross-examination by counsel.

does exercise a "quasi-judicial function", I stated in the dissent in *Woodlawn*:

"In my opinion this is unfortunate language, unnecessary to the decisions in those cases, which gives rise to the notion that the holding in *Dal Maso* has been somewhat impaired but not overruled. As I see it, in both cases the County Council was exercising a *'restricted legislative function,'* not a *'quasi-judicial function.'* It has been my observation that when the prefix 'quasi' is appended to a well-defined word, distinctions are blurred, fuzzy thinking is invited and error often results. Its use should be avoided. If the restrictions placed upon the exercise of legislative power are those usually associated with the exercise of judicial functions, one may inquire if the characterization of the function as 'quasi-judicial' really does any harm if the suggested difference in characterization is not merely a semantic exercise? I think not. These are quite different concepts and result in different applications of the requirements of due process of law, depending upon whether a function is 'legislative,' on the one hand, or 'judicial' on the other. If the function is legislative, due process of law does not require a hearing, the opportunity for counsel, the taking of testimony (under oath or otherwise), the right of confrontation or cross-examination and other time-honored safe guards associated with the exercise of a judicial function. The only limitations upon the exercise of the legislative power are those specifically set forth in the Constitution, as for example, the prohibition against the taking of private property other than for public use and upon the payment of just compensation, and that the legislation be not unreasonable, arbitrary and capricious and *thus* a denial of due process of law. When the legislative power is delegated by the General Assembly to a local legislative body the grant is unlimited, except as limited by the statute making the grant of legislative power, subject, of course, to the constitutional limitations mentioned. In short, the

power of review of a court, either upon an original proceeding or upon appeal, is limited to the constitutional limitations mentioned *and* such limitations as the statute imposes." (Pages 208-209 of 241 Md.; page 162 of 216 A. 2d).

I am more firmly convinced than ever of the correctness of those observations.

Chief Judge Brune put it well for the Court in *Overton v. Board of County Commissioners of Prince George's County*, 223 Md. 141, 146, 162 A. 2d 457, 460 (1960) involving a rezoning application from R-R (rural residential) to C-O (commercial-office building), when he stated:

"As to the matter of cross-examination of witnesses and inspection of documents, the appellants cite two Maryland cases, *Board of Zoning Appeals v. McKinney*, 174 Md. 551, 199 A. 2d 540, and *Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 49 A. 2d 799, as setting out the requirements for such hearings. Both cases are inapplicable to the instant case, because they involve administrative bodies acting in quasi-judicial roles, whereas here we have the County Commissioners acting in their legislative capacity. In addition, both of the above cited cases, in discussing the requirements of a hearing before the administrative bodies, state only that a public hearing implies the right to present testimony, but no mention is made of the right to cross-examine witnesses or inspect documents."

As is pointed out in the majority opinion the actual holding in *Overton*—as in the case at bar—was that the appellants did not request the right to cross-examine. Chief Judge Brune stated "and there is no showing whatever that it would have been denied them had it been requested"—thus indicating that the legislative body *may*, but is not constitutionally *required* to grant the right to cross-examine.

The *dictum* in *Overton* is a strong one, addressed to the very propositions under discussion. It has not, in my opinion, been impaired in any way by Chief Judge Brune's statement in

*Severn v. City of Baltimore,* 230 Md. 160, 172, 186 A. 2d 199, 205 (1962), which was not a zoning case as the majority observed, but, on the contrary, was an administrative proceeding before the board of trustees of the retirement system of Baltimore City to determine on the facts before it whether a fire fighter's death was not caused by a heart attack which had occurred while fighting a fire, so that his widow was not entitled to an accidental death benefit. Chief Judge Brune stated:

> "Since our holding is based on waiver, it is not to be taken as implying our approval of any administrative practice in contested cases which would involve hearing a witness without the presence of, or notice to, the claimant or would deprive the claimant of the opportunity for cross-examination of a witness or of an expert whose report may serve as the basis for administrative decision."

It will be observed that the proceeding was in no way a legislative one and *Overton* is not mentioned.

Nor, in my opinion, may the majority take any comfort from the *dictum* in *Temmink v. Board of Zoning Appeals for Baltimore County* (the "first *Temmink* case"), 205 Md. 489, 497, 109 A. 2d 85, 89 (1954), in which Judge Delaplaine, for the Court, in remanding a rezoning case to the Circuit Court for Baltimore County, stated:

> "In reviewing the action of the zoning board, the court on appeal considers the board's action, not the opinion of its members. We will therefore reverse the order appealed from and remand the case for further hearing when the report of the Planning Commission may be introduced in evidence, and the parties may produce any further evidence and have the right of cross-examination. On *certiorari* directed to the Board of Zoning Appeals, the Circuit Court has the power to affirm the Board's decision or reverse it in whole or in part, and may remand any case for the entering of a proper order or for further proceedings as the Court shall determine."

84

As the majority has pointed out, cross-examination is permitted before the Board of Appeals of Baltimore County, and there is no suggestion in the opinion in first *Temmink*, that this practice would be denied by the Board, or that cross-examination was a constitutional right.

In my opinion, the opinion in *Overton* correctly states the applicable law. We should approve and follow it.