# DANIEL MOSES EICHBERG v. MARYLAND BOARD OF PHARMACY

[No. 295, September Term, 1981.]

*Decided November 6, 1981.*

The cause was argued before MASON, LISS and BISHOP, JJ.

*Mark Woodard,* with whom were *Allen D. Greif* and *Greif, Cohen & Alpert* on the brief, for appellant.

*Ronald S. Gass, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, Daniel Moses Eichberg, filed this appeal from an order of the Circuit Court for Baltimore County affirming the action of the Maryland Board of Pharmacy in revoking the appellant's license to practice pharmacy.

Appellant was charged by indictment in the Circuit Court for Baltimore County with violations of various provisions of the Maryland drug abuse statutes. The case resulted in a mistrial because a newspaper, which included an article about Eichberg's trial, was found in the jury room. Appellant subsequently entered an *Alford* plea [1] of guilty to the charge of unlawfully dispensing a controlled dangerous substance without a prescription.

At the conclusion of the criminal proceedings against appellant, the Maryland Board of Pharmacy, the appellee herein (hereinafter the "Board") charged the appellant with violating various provisions of the Maryland pharmacy statute, Maryland Code (1957, 1980 Repl. Vol.), Article 43, § 266 A, *et seq.*[2] A hearing was held before the Board on

---

1. *See* North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An Alford plea is one which states that the defendant, while not admitting guilt, is entering a guilty plea on a minor charge to avoid prosecution on a more serious charge.

2. Appellant was charged with, and found guilty of, violating the following provisions of § 266 A (c) (1) of the Maryland pharmacy statute:

(i) Conviction of a crime involving moral turpitude;

October 17 and 22, 1979. On November 21, 1979, the Board, by unanimous vote, issued an order revoking appellant's license to practice pharmacy in Maryland after finding him guilty of all charges.

Appellant then appealed this order to the Circuit Court for Baltimore County. A hearing was held on January 22, 1981 and on March 10, 1981 the court issued an opinion and order affirming the decision of the Board. Appellant now asks us to review that order. He raises the following issues to be determined by this Court:

    I. Whether the trial court erred in holding that the previously recorded testimony of an adverse witness in the criminal proceedings against appellant were admissible at the revocation hearing before the Board of Pharmacy?

    II. Whether hearsay evidence is admissible at administrative hearings which appellant contends are quasi-criminal?

    III. Whether an Assistant Attorney General's letter to the Board prior to its rendering a decision on the merits, outlining past unfavorable incidents by

---

(ii) Conviction of a crime involving professional misconduct respecting the pharmacy laws of this or any other state;

\* \* \*

(vii) Dispensing or sale of any drug for which a prescription is required without first having received from an authorized prescriber a written or oral prescription for the drug;

\* \* \*

(xiv) Wilful making or filing of any false report or record in his practice as a pharmacist;

(xv) Wilful omission to file or record, wilful impediment or obstruction or a filing or recording, or inducement of another person to omit to file or record any report required by law; or

(xvi) Professional, physical, or mental incompetence.

The entire Maryland pharmacy statute was recently recodified by the General Assembly pursuant to House Bill 1, 1981 Md. Laws ch. 8. *See* Maryland Health Occupations Code Annotated § 12-101 *et seq.* The provisions analogous to those which the Board found Mr. Eichberg guilty of violating are now recodified at Maryland Health Occupations Code Annotated § 12-311 (6), (7), (8), (9), (14), (20), (21), (22) 1981.

appellant and recommending revocation of his license and whether the Board's having a file on appellant's prior history from the inception of the case amounts to sufficient evidence to rebut the presumption of proper conduct by public officials?

IV. Whether the composition of the Board of Pharmacy, which is composed of practicing pharmacists that have an economic interest in having fewer pharmacists and reducing their competition, constitutes an inherent bias and resulting conflict of interest, such that the appellant was denied a fair and impartial hearing?

## I. & II.

At the appellant's criminal trial, Joyce Ann Buckley, a police informant, appeared as a witness for the State. At the subsequent hearing before the Board, the Assistant Attorney General and administrative prosecutor for the Board offered into evidence as a State's exhibit a certified copy of Ms. Buckley's testimony at the criminal trial. The transcript included the direct examination by the State's Attorney and the cross-examination by appellant's counsel who represented the appellant at both the criminal trial and at the administrative hearing below.

Appellant initially complains that the admission by the Board of the transcribed testimony of Ms. Buckley was an abuse of discretion in that the testimony as given in the criminal trial was hearsay, biased and self-serving. He cites in support of this contention the rule adopted by the Board to regulate formal hearings in contested cases.[3] The rule is stated as follows:

In contested cases:

(a) Agencies may admit and give probative effect to evidence which possesses probative value

---

[3]. Md. Code Art. 41 § 252. See COMAR 10.34.01.03 G (1) [Board of Pharmacy regulation adopting the Administrative Practices Act].

commonly accepted by reasonable and prudent men in the conduct of their affairs. . . . They may exclude incompetent, irrelevant, immaterial and unduly repetitious evidence.

As appellant concedes, it is well settled in Maryland that hearsay evidence is admissible into evidence at administrative hearings. In *Montgomery County v. National Capital Realty Corp.,* 267 Md. 364, 297 A.2d 675 (1972), the Court of Appeals stated:

[A]dministrative agencies are not generally bound by the technical common-law rules of evidence, although they must observe the basic rules of fairness as to parties appearing before them. Thus, even hearsay evidence may be admitted in contested administrative proceedings. *Maryland Fire UW v. Insurance Comm'r,* 260 Md. 258, 267, 272 A.2d 24 (1971); *Neuman v. City of Baltimore,* 251 Md. 92, 97, 246 A.2d 583 (1968); *Dal Maso v. Board of County Comm'rs of Prince George's County,* 238 Md. 333, 209 A.2d 62 (1965). [267 Md. at 376.]

In *Redding v. Board of County Commissioners for Prince George's County,* 263 Md. 94, 282 A.2d 136 (1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1791, 32 L.Ed.2d 124 (1972), the same Court noted:

[W]e have held that [hearsay] evidence is admissible before an administrative body in contested cases and, indeed, if credible and of sufficient probative force, may be the sole basis for the decision of the administrative body. See *Tauber v. County Board of Appeals,* 257 Md. 202, 213, 262 A.2d 513, 518 (1970) and prior cases therein cited. [263 Md. at 110-11.]

The provisions of the Administrative Procedure Act (APA) are consistent with the case law hereinbefore cited. It is important to distinguish that the test of admissibility under the Maryland APA is the probative value of the evidence,

not its credibility. Appellant attempts to attack Ms. Buckley's testimony not only on the basis of hearsay, but also that the testimony was biased and self-serving. This line of reasoning clearly confuses probative value with credibility. *See generally* McCormick, *Evidence* § 350 (2d ed. 1972). Probative value relates to the degree by which the evidence advances the inquiry; whereas credibility relates to the weight to be given to the evidence by the trier of fact. Appellant does not object to the admissibility of the testimony on the grounds that it lacks probative value or relevancy; rather, he asserts that the testimony lacks the requisite credibility, which in turn goes to the weight that the Board should have accorded her testimony, not as to whether the testimony should have been excluded.

The transcribed testimony of Ms. Buckley at the previous criminal trial was admissible because it was taken under oath, she was subject to cross-examination and the witness was unavailable to testify in person. The record clearly demonstrates that Ms. Buckley did not appear at the hearing before the Board because she was beyond the jurisdiction of the Board and the State's effort to produce her was unsuccessful. The Board's charges were essentially the same as those tried in the criminal case. Ms. Buckley testified under oath at a public trial. The appellant, as the defendant in the criminal trial and the respondent in the action before the Board, was afforded an opportunity to cross-examine Ms. Buckley at the criminal trial and from the record it is apparent that he extensively availed himself of that opportunity.

Two cases from other jurisdictions are factually similar to the case at bar: *Zimmerman v. Board of Regents,* 31 App. Div. 2d 560, 294 N.Y.S.2d 435 (1968) and *Davis v. Board of Medical Examiners,* 108 Cal. App. 2d 346, 239 P.2d 78 (1951). In *Zimmerman, supra,* the Board of Regents of the state University of New York suspended a physician's license to practice medicine for one year. At the hearing the transcribed testimony of two witnesses at the criminal trial was introduced to substantiate the charges against Zimmerman. On appeal, the physician challenged the

admissibility of the testimony of the witnesses on the ground that they did not appear at the administrative hearing and as a result the doctor was deprived of his right to cross-examine. The court found the testimony was admissible for basically the same reasons hereinbefore stated. In *Davis, supra,* a transcript of a prior criminal action was admitted into evidence in a disciplinary hearing against a physician before the California Board of Medical Examiners. The doctor challenged the evidence on the ground that the criminal action had been dismissed because of a hung jury. The court held the transcript was admissible.

Appellant next argues on this issue that the administrative proceedings in this case are "quasi-criminal." We know of no such mutation in Maryland law. Appeals of disciplinary actions by administrative agencies are civil actions. *See Unnamed Physician v. Commission on Medical Discipline,* 285 Md. 1, 400 A.2d 396, *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979). Appellant, however, cites three cases from other jurisdictions to support his contention that the disciplinary hearing was "quasi-criminal" and that the hearsay evidence should therefore be excluded.[4] After reviewing those cases we find them to be distinguishable on the facts and we decline to extend any of the rules enunciated in those cases to our jurisdiction.

Finally on this issue, appellant complains that the prior recorded testimony of Sidney Pats, another of the State's witnesses in the criminal trial, was inadmissible. The short answer to this objection is that Pats' testimony was never offered into evidence. Pats appeared and testified at both the criminal trial and the administrative hearing. Apparently appellant's counsel initially objected to the administrative prosecutor's use of Pats' transcribed testimony to refresh his recollection. After discussion he withdrew his objection. We have carefully read his testimony at the administrative

---

**4.** The cases cited are: Walker v. Unemployment Compensation Board of Review, 27 Pa. Commw. Ct. 522, 367 A.2d 366 (1976); State v. Morris, 221 S.W.2d 206 (Mo. 1949); Jeffers v. Screen Extras Guild, Inc., 134 Cal. App. 2d 622, 286 P.2d 30 (1955).

hearing and find nothing in that testimony that is even slightly objectionable.

## III.

At the October 22, 1979 hearing before the Board, Ms. Gauvey stated that by agreement of counsel, she would not offer any recommendation regarding sanctions against Mr. Eichberg during her closing argument, but would put those recommendations in writing. The condition precedent to the Board's consideration of Ms. Gauvey's recommendation as to sanctions was that the Board first reach a decision on the merits by adjudicating the appellant's guilt or innocence of the charges made against him in the administrative hearing. In her letter to the Board, dated November 14, 1979, Ms. Gauvey reiterated that the Board was to consider her recommendations only after a finding of guilt or innocence. The letter reviewed the appellant's prior criminal and disciplinary history and recommended that his license to practice pharmacy be revoked. Appellant suggests that the letter created bias and prejudice against him which effectively resulted in his being denied a fair and impartial hearing. Appellant offered no evidence either by way of proffer or by testimony to indicate that the Board knew of Ms. Gauvey's recommendations prior to their substantive rulings on the appellant's guilt or innocence. The law in Maryland is clear that the proper performance of a public official's duty is presumed in the absence of proof to the contrary. *See Dal Maso v. Board of County Commissioners of Prince George's County,* 238 Md. 333, 209 A.2d 62 (1965); *Gregg v. Laird,* 121 Md. 1, 87 A. 1111 (1913). The record is clear that appellant did not offer evidence sufficient to rebut the presumption of proper performance of a public official's duty.

Appellant further contends that the mere existence and general availability of the Board's records of its past disciplinary action against the appellant impermissibly biased the Board. However, there is no evidence that the Board,

prior to reaching a decision on the merits of the case, ever consulted its records on Mr. Eichberg or that the Board was even aware of the appellant's prior criminal or disciplinary history. Moreover, one of the Board's functions is to act in an investigatory capacity. Under these circumstances, the Board was entitled to review the evidence available to it in deciding whether to take disciplinary action. Such investigation on its part would not result in the Board being disqualified to continue to perform its prosecutorial function.

The United States Supreme Court, in *Winthrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), discussed the due process problems arising when a single agency is vested with the dual functions of investigation and prosecution:

> The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1949). [421 U.S. at 55.]

In the absence of proof to the contrary, we must assume the members of the Board acted in good conscience in reaching what they considered a fair resolution of the controversy in this case. Appellant again failed to offer any proof that the Board acted in bad faith.

IV.

Appellant lastly contends that because the Board of Pharmacy which heard and decided this case was made up of practicing pharmacists, they have an economic interest in

reducing the number of their competitors and he was therefore denied a fair and impartial hearing.

We find no Maryland cases supporting this contention. Appellant quotes in his brief several cases from other jurisdictions in which the question of bias is discussed generally. *See In re Heirich,* 10 Ill.2d 357, 140 N.E.2d 825 (1956); *State v. Madry,* 8 Wash. App. 61, 504 P.2d 1156 (1972). The case most factually similar, however, is *Kachian v. Optometry Examining Board,* 44 Wis.2d 1, 170 N.W.2d 743 (1969). In *Kachian,* an optometrist challenged a state statute requiring members of the Wisconsin Optometry Examining Board to be residents of the state and engaged in active practice. He did not claim actual bias nor did he offer any proof of misconduct or prejudice by any Board member. He contended, as does the appellant herein, that "there is an inbuilt, inescapable, even if indirect, financial interest involved when an optometrist board member sits in judgment on a fellow optometrist." 44 Wis.2d at 10. The court held:

> [W]e would follow the general rule on members of a professional or occupational group serving on an administrative agency regulating such profession or occupation, which has been stated as follows:
>
> > "* * * it appears to be a general rule that membership in or connection with the same profession or occupation as that of the accused licensee does not alone indicate a disqualifying bias or interest on the part of the questioned tribunal member sufficient to violate due process." [Footnote omitted.] [*Id.* at 11.]

Since the *Kachian* decision, other jurisdictions have rejected challenges similar to appellant's. *E.g., Rite Aid Corp. v. Board of Pharmacy of N.J.,* 421 F. Supp. 1161, (D.N.J. 1976), *appeal dismissed,* 430 U.S. 951, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977); *Blanchard v. Michigan St. Bd. of Examiners in Optometry,* 40 Mich. App. 320, 198 N.W.2d 804 (1972); *Brown v. State Bd. of Examiners in Optometry,*

263 N.W.2d 490 (S.D. 1978); *Apoian v. State,* 89 S.D. 539, 235 N.W.2d 641 (1975); *Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978). *See* Annot., 97 A.L.R.2d 1210 (1964).

In light of this overwhelming authority, appellant's contention that the pharmacist members of the Board must be disqualified because of an indirect and speculative financial benefit must fail. The record is devoid of any evidence of an actual, direct or substantial pecuniary interest on the part of any of the pharmacists which would require their disqualification.

*Judgment affirmed, costs to be paid by appellant.*