Henry P. TRON

v.

**PRINCE GEORGE'S COUNTY, Maryland.**

**No. 317, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Nov. 10, 1986.

Joseph F. McBride, Silver Spring, for appellant.

John T. Beamer, II, Associate Co. Atty. (Thomas P. Smith, Co. Atty. and Michael O. Connaughton, Deputy Co. Atty., on the brief), Upper Marlboro, for appellee.

Argued before MOYLAN, BISHOP and ALPERT, JJ.

BISHOP, Judge.

■ Appellant, Henry Tron, a Prince George's County firefighter, sought a disability retirement from the Prince George's County Fire Service alleging service-related injuries to his neck and back. Pursuant to its authority under the County's Fire Service Pension Plan, the Disability Review Board determined at an evidentiary hearing on September 1, 1983, that appellant was disabled but that his disability was not service connected. Appellant then filed a petition for writ of mandamus [1] in the Circuit Court for Prince George's County seeking reversal of the Board's determination. The circuit court affirmed the action of the Board.

Appellant raises three issues:

I. Was appellant denied a fair hearing before the Disability Review Board because he was denied a reasonable opportunity to cross-examine adverse witnesses?

II. Did the trial court err in ruling that the opinion of Dr. Weintraub, Chairman of the Medical Advisory Board, had sufficient probative force to serve as the basis for the Disability Review Board's finding?

III. Is the Disability Review Board required to state findings of fact in support of its decision to grant or deny service-connected disability?

---

1. Because the Disability Review Board provided no means of appeal to an aggrieved party, appellant pursued a writ of mandamus action. Mandamus is a device used to compel administrative agencies to perform their function properly. *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 514, 331 A.2d 55 (1975).

## FACTS

Appellant began working for Prince George's County as a firefighter on July 1, 1966. On September 15, 1966, while stopped at a traffic signal in their ambulance, appellant and a co-worker were struck from behind by a car. The ambulance careened forward eight to ten feet into the rear of the car immediately in front of it. Appellant's co-worker complained of back pains, and appellant's head and neck began to ache as a result of his head snapping back on impact and hitting the back of the ambulance cab. Another ambulance was summoned and both were taken to Washington Adventist Hospital. Appellant was x-rayed, examined and released. He was instructed to see his family doctor should complications arise. He returned to work four days later. Approximately six months later, appellant began to feel occasional lower back pain which never disappeared. Yet he continued to work without interruption for the County. In 1978, he saw his family physician, Dr. Boyle, on two occasions: for a sore heel that spring, and in the fall for a pulled shoulder muscle which he sustained attempting to lift a sack of chicken feed. Appellant again visited Dr. Boyle in July of 1982; this time complaining of a sore and sometimes stiff back and neck. After a full examination which included x-rays, Dr. Boyle found that appellant was suffering from an advanced degenerative joint disease in his cervical vertebra, or neck area, and mild lumbosacral strain.

In July of 1982, appellant ended his association with the County Fire Service, and filed a claim for disability retirement. On June 29, 1983, the Disability Review Board made the determination that appellant's disability was non-service connected. According to § 4.3(c)(1) of the Plan, a non-service connected disability is defined as:

> [A] disability ... not caused by an injury or sickness suffered as a result of his performance of his duties as an Employee. ...

As a consequence, a recipient of a non-service connected disability receives 50% of his normal pay, which is taxable. By contrast, a recipient of a service-connected disability

pension receives 70% of his normal pay, which is non-taxable. The Plan at § 4.3(c)(1), defines service-connected disability as:

> [A] disability ... caused by an injury or sickness suffered as a result of his performance of his duties as an Employee....

Appellant requested reconsideration by way of a full hearing before the Board. At the hearing on September 1, 1983, appellant argued that his disability was service-connected. In support of his contention, appellant adduced live testimony from Dr. Boyle that appellant's disability was service-connected because there was a lack of any other serious trauma to his cervical vertebra and the lack of any family history of serious degenerative disorders. Moreover, in Dr. Boyle's opinion, the 1966 accident was the only serious trauma which could have induced appellant's advanced degenerative joint disorder at the age of 42.

The County declined to present any witnesses for their argument that appellant's disability was not service-connected. Instead, a booklet was introduced into evidence which contained, *inter alia,* the reports of three doctors who examined appellant: Dr. Mendelsohn, Dr. Abendschein and Dr. Lourie.[2] These doctors confined their examinations to appellant's physical condition and did not address the issue of whether appellant's disability was service-related or not. The booklet, however, did contain an opinion from the Medical Advisory Board's Chairman, Dr. Weintraub. Despite never having seen, examined or treated appellant, Dr. Weintraub concluded, based on the reports of Drs. Mendel-

---

2. The record did not indicate whether these physicians are members of the Medical Advisory Board. The Pension Plan, § 4.3(b)(1), provides:

> ... The Medical Advisory Board shall conduct such inquiry as it deems necessary and proper in the circumstances in order to give said opinion, which shall include a medical examination of the Participant by one or more members of the Medical Advisory Board, or by a physician or physicians selected for that purpose by the Medical Advisory Board.

sohn, Absendschein and Lourie, that appellant's disability was not service-connected. This booklet was introduced into evidence over the objection of appellant's counsel who argued, *inter alia,* that there existed no opportunity to cross-examine any of the doctors whose views were not elicited in live testimony.

At the hearing's conclusion, the Disability Review Board determined that appellant was, in fact, disabled; however, the nature of the disability was found to be non-service connected. The circuit court affirmed the Board's decision.

## *Right to Cross-Examine*

On one hand, we have the well-established rule of administrative law that:

> [H]earsay evidence is admissible before an administrative body in contested cases and, indeed, if credible and of sufficient probative force, may be the sole basis for the decision of the administrative body.

*Redding v. Board of County Commissioners for Prince George's County,* 263 Md. 94, 110–11, 282 A.2d 136 (1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1791, 32 L.Ed.2d 124 (1972). On the other hand, the Court of Appeals has firmly established that:

> [W]hen an administrative board or agency is required to hold a public hearing and to decide disputed adjudicative facts based upon evidence produced and a record made, that *a reasonable right of cross-examination must be allowed the parties.*

*Hyson v. Montgomery County,* 242 Md. 55, 67, 217 A.2d 578 (1966) (emphasis supplied). *See also Rogers v. Radio Shack,* 271 Md. 126, 129, 314 A.2d 113 (1974); *Town of Somerset v. Board,* 245 Md. 52, 65, 225 A.2d 294 (1966); *Dembeck v. Shipbuilding Corp.,* 166 Md. 21, 27, 170 A. 158 (1934); *American Radio-Tel. Serv. v. Pub. Serv. Comm'n,* 33 Md.App. 423, 435, 365 A.2d 314 (1976).

Administrative agencies are not bound by "technical common law rules of evidence." *Dickson-Tidewater v.*

*Supervisor,* 273 Md. 245, 253, 329 A.2d 18 (1974). In most applications this means that hearsay evidence is acceptable in an administrative hearing; however, the Court has also established boundaries regarding the extent of the admissibility of hearsay evidence. In *Comm'n on Medical Discipline v. Stillman,* 291 Md. 390, 422, 435 A.2d 747 (1981), the Court stated:

> [W]hile administrative agencies are not bound to observe the 'technical common law rules of evidence,' they are not prevented from doing so as long as the evidentiary rules are not applied in an arbitrary or oppressive manner that deprives a party of his right to a fair hearing.

For the reasons that follow we believe that the hearsay evidence in the case *sub judice* violated the limitation established in *Stillman.*

 We look to the Pension Plan to determine appellant's right to cross-examination. Section 4.3(b)(2) of the Plan provides:

> (2) The Participant whose disability is being determined shall be given the opportunity to examine any evidence presented to, or otherwise obtained by, the Disability Review Board in connection therewith, to comment on such evidence, and to introduce further evidence with respect thereto.

The statute is ambiguous in terms of granting appellant an unqualified right to cross-examination. However,

> where regulations or written procedures are either silent or ambiguous, great weight will be given to administrative custom and interpretation.

*Movement Against Destruction v. Trainor,* 400 F.Supp. 533, 573 (1975) (citing *Power Reactor Company v. Electricians,* 367 U.S. 396, 401–08, 81 S.Ct. 1529, 1531–35, 6 L.Ed.2d 924 (1961)). Although Maryland's Admin.Proc. Act does not apply,[3] we note that it is not only custom and

---

**3.** The Prince George's County Pension Plan grew out of a statute in the Prince George's County Code authorizing the County Executive to

practice but that the law requires, in contested cases within the ambit of that Act, each party be given the right to cross-examine the opposing party's witnesses. Md. State Gov't Code Ann. § 10–208(e)(3) (1984). This fact, coupled with *Hyson, supra,* clearly demonstrates that the opportunity to cross-examine witnesses is a requirement of administrative adjudicatory hearings. Because no live witnesses were produced at the hearing, appellant was deprived of the opportunity to cross-examine.

The case *sub judice* is remarkably similar to *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In *Richardson,* Pedro Perales claimed disability insurance benefits under the Social Security Act as a result of a back injury sustained while at work. At the hearing, the state agency, seeking to deny his claim, introduced reports of four doctors who examined Mr. Perales. Each report was damaging to Perales' claim. Perales' attorney objected on the basis that there was no opportunity to cross-examine the physicians. The objection was overruled. The claim was denied.

Perales argued that he was deprived of procedural due process because the evidence against him was exclusively hearsay and, therefore, he was denied his right to cross-examination. The *Richardson* Court rejected this contention, holding that the medical reports met the statutory formula of "substantial evidence" necessary to deny the claim. The Court decided that Perales forfeited his right to cross-examine the doctors by his failing to utilize the statutory subpoena power which would have compelled the presence of the doctors at the hearing. The Court stated:

---

establish a firefighter pension fund. *See* Prince George's County Code (1975) § 16–231. As such, the Disability Review Board is not within the scope of Maryland's Administrative Procedure Act because it does not satisfy either definition of "Agency" set out in the State Government Article, *see* Md. State Gov't Code § 10–201(b). *See also Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 510–12, 397 A.2d 1027 (1979); *Urbana Civic Ass'n v. Urbana Mobile Village, Inc.,* 260 Md. 458, 272 A.2d 628 (1971).

We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, *when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.*

*Richardson v. Perales,* 402 U.S. at 402, 91 S.Ct. at 1428 (emphasis supplied). The Court, in denying the due process claim, placed great emphasis on the subpoena power granted to all claimants under the Social Security Act. *See* 20 C.F.R. § 404.926. The Court, in essence, declared that a claimant cannot be heard to complain about a lack of opportunity to cross-examine witnesses when the claimant has the power to subpoena the witnesses and fails to do so.[4]

■ Maryland administrative review boards have subpoena power. *See* Md. Health-General Code Ann. § 19–364(h) (1982, 1986 Cum.Supp.) (subpoena power granted for appeals regarding sanctions against health care institutions); Md. Health Occ.Code Ann. § 6–316(d) (1982) (subpoena power granted to mortician licensing hearings); Md. Health Occ.Code Ann. § 7–314(f) (1982) (subpoena power granted nursing home licensing hearings); Md. Health Occ.Code Ann. § 12–312(e) (1982) (subpoena power granted the Maryland Board of Pharmacies). The Prince George's County

---

**4.** During oral argument appellant's attorney stated that it had been the practice of the Disability Review Board to refuse the claimant's request that the Medical Advisory Board's examining physicians be present and subject to cross-examination at the Disability Review Board's hearings. The County Attorney agreed this is the Board's practice and contended it is in accordance with the Pension Plan.

Disability Review Board, however, does not provide claim-ants with subpoena power.[5]

Maryland case law supports the *Richardson* holding. In *Eichberg v. Maryland Bd. of Pharmacy*, 50 Md.App. 189, 436 A.2d 525 (1981), a pharmacist appealed a ruling by the Maryland Board of Pharmacy which revoked his license. Earlier in a criminal proceeding, Eichberg entered an *Alford* guilty plea to a charge of dispensing a controlled dangerous substance without a prescription. Thereafter, the Pharmacy Board held a hearing to determine whether appellant's pharmacy license should be revoked. At the hearing the transcript of the testimony of a key State's witness in the criminal proceeding was introduced into evidence. Among other things, the appellant objected to the introduction of the transcript because he could not cross-examine the witness at the license revocation hearing.

The transcribed testimony of Ms. Buckley at the previous criminal trial was admissible because it was taken under oath, she was subject to cross-examination and the witness was unavailable to testify in person. The record clearly demonstrates that Ms. Buckley did not appear at the hearing before the Board because she was beyond the

---

5. Although repealed, the statute establishing the medical board for the purpose of reviewing occupational disease claims under the Md.Ann. Code art. 101, §§ 27–29 (1979) may be helpful for comparison purposes. Section 28 provided in pertinent part:

> The medical board, upon reference to it of a claim for occupational disease, shall notify the claimant or claimants and the employer to appear before it at a time and place stated in said notice. At such hearing either party may offer testimony of such witnesses as they may desire, which shall become a part of the record of the proceedings before the medical board. If the employee be living, he shall appear before the medical board at the time and place specified and shall then or thereafter submit to such examinations, as the board may require. The claimant and the employer or his insurance carrier shall each be entitled, at his own expense, to have present at all examinations conducted by the medical board, a physician admitted to practice medicine in the State who shall be given every reasonable facility for participating in every such examination.

From the record in this case no such opportunity for the presentation of evidence is given to a claimant under the Medical Advisory Board's procedure.

jurisdiction of the Board and the State's effort to produce her was unsuccessful. The Board's charges were essentially the same as those tried in the criminal case. Ms. Buckley testified under oath at a public trial. The appellant, as the defendant in the criminal trial and the respondent in the action before the Board, was afforded an opportunity to cross-examine Ms. Buckley at the criminal trial and from the record it is apparent that he extensively availed himself of that opportunity.

Two cases from other jurisdictions are factually similar to the case at bar; *Zimmerman v. Board of Regents,* 31 App.Div.2d 560, 294 N.Y.S.2d 435 (1968) and *Davis v. Board of Medical Examiners,* 108 Cal.App.2d 346, 239 P.2d 78 (1951). In *Zimmerman, supra,* the Board of Regents of the state University of New York suspended a physician's license to practice medicine for one year. At the hearing the transcribed testimony of two witnesses at the criminal trial was introduced to substantiate the charges against Zimmerman. On appeal, the physician challenged the admissibility of the testimony of the witnesses on the ground that they did not appear at the administrative hearing and as a result the doctor was deprived of his right to cross-examine. The court found the testimony was admissible for basically the same reasons hereinbefore stated.

*Id.* at 194–95, 436 A.2d 525 (discussion of *Davis* omitted).

Based on *Eichberg,* this Court has held that claimants before administrative review boards are not deprived of their right of cross-examination when, in fact, there was an opportunity to cross-examine. Appellant had no such opportunity.

Perhaps the most often repeated rule of administrative law is that administrative agencies "must observe the basic rule of fairness as to parties appearing before them." *Ottenheimer Pub. v. Employment Security Admin.,* 275 Md. 514, 520, 340 A.2d 701 (1974); *Dickenson-Tidewater v. Supervisor,* 273 Md. 245, 253, 329 A.2d 18 (1974); *Rogers v. Radio Shack,* 271 Md. 126, 129, 314 A.2d 113 (1974); *Fair-*

*child Hiller v. Supervisor,* 267 Md. 519, 524, 298 A.2d 148 (1973). Under this fairness requirement, the right of cross-examination must be reasonably available. *Hyson v. Montgomery County,* 242 Md. 55, 67, 217 A.2d 578 (1965). The Court of Appeals in *Hyson* explained:

> The authorities seem to be in accord that when an administrative board or agency is required to hold a public hearing and to decide disputed adjudicative facts based upon evidence produced and a record made, that *a reasonable right of cross-examination must be allowed the parties.* Professor Davis, *op. cit.,* § 7.05, states the proposition in this manner: "When the adjudicative facts are in dispute, our legal tradition is that the party affected is entitled not only to rebut or explain the evidence against him but also to 'confront his accusers' and to cross-examine them" We have no intention of attempting to promulgate a comprehensive rule respecting the type or the amount of cross-examination that the Council must provide at hearings on applications for reclassification. The rationale of the cases and authorities is that *reasonable cross-examination, which is required for a full and true disclosure of the facts,* having due regard to the circumstances of each particular case, the nature of the proceedings, and the character of the rights which may be affected by it *must be permitted;* and that is as far as we are required to go at this time.

*Id.* (emphasis supplied) (footnote omitted).

◼ In the case *sub judice,* based on Dr. Weintraub's report, on behalf of the Medical Advisory Board, the Disability Review Board denied appellant's claim. We deal first with the evidence of the three examining physicians upon whose reports Dr. Weintraub placed great reliance in reaching his conclusion on behalf of the Medical Advisory Board. The evidence of these doctors stands in the same posture as that submitted by the examining physicians in *Richardson.* Their reports were submitted to Dr. Weintraub in his capacity as chairman of the Medical Advisory Board. His position is analogous to that of the hearing

examiner in *Richardson* to the extent that they both reached administrative conclusions based on the written reports of certain examining physicians who had not been subject to cross-examination by the respective claimants. In *Richardson,* the cross-examination issue was resolved against the claimant because of his failure to request subpoenas for the physicians as he had the opportunity to do under 20 C.F.R. § 404.926. In the case *sub judice,* no such opportunity was available to the appellant. These physicians whose evidence was essential to the conclusion reached by the Medical Advisory Board should have been subject to the possibility of cross-examination.[6] This is essential to a full and fair hearing. We agree with the concise statement set out long ago in *Dembeck v. Shipbuilding Corp.,* 166 Md. 21, 27, 170 A. 158 (1933):

> Under such circumstances, there would seem to be a clear denial to the claimant of a right, recognized and enforced in all courts wherein truth and justice is the objective, for the parties to the cause to be confronted with the witnesses against them, and an opportunity to test the correctness or truthfulness of the evidence by cross-examination.

■ Because of our holding in the first issue, we do not reach appellant's second contention that the trial court erred in ruling that Dr. Weintraub's opinion had sufficient probative force to serve as the basis for the Disability Review Board's finding. We do point out that if hearsay evidence is of sufficient probative force, it may serve as the sole basis for the administrative body's decision. *Richardson,* 402 U.S. at 402, 91 S.Ct. at 1427; *Redding v. Board of*

---

6. Analogous to this issue is that of the evidentiary use of a hospital report. In *Marlow v. Cerino,* 19 Md.App. 619, 637, 313 A.2d 505 (1974) we stated:

> In short, the majority view is that opinions in a hospital report are admissible in evidence, and it is incumbent upon the person seeking to attack those opinions to call the declarant as a witness and examine him for weakness or error. *See also* 5 *Wigmore, Evidence,* §§ 1517–1561 (3rd ed. 1940), 6 *Wigmore, supra* at § 1707.

*County Commissioners for Prince George's County,* 263 Md. 94, 282 A.2d 136 (1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1791, 32 L.Ed.2d 124 (1972); however, as we have held, *supra,* at least the procedural means must be available to permit cross-examination.

■ As chairman of the Medical Advisory Board, Dr. Weintraub is an administrative official and "a party challenging agency action is ordinarily forbidden from inquiring into the mental processes of an administrative official" unless bad faith or improper behavior on the part of the official is shown or where there are no formal findings of fact. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 214, 477 A.2d 759 (1984) (citing 3 Davis, *Administrative Law Treastise,* §§ 17.4–17.7 (2d ed. 1980)). *See also, Boehm v. Anne Arundel County,* 54 Md.App. 497, 503, 459 A.2d 590 (1983). Dr. Weintraub did make findings of fact which were "adopted" by the Disability Review Board and, therefore, he is not subject to cross-examination.

Finally, appellant asks whether the Disability Review Board is required to make findings of fact in support of its decision to grant or deny service-connected disability. We hold that findings of fact are required.

Section 4.3(b)(1) of the Prince George's County Fire Service Pension Plan provides in pertinent part:

(b) *Determination of Disability.*

(1) All determinations of disability shall be made by the Disability Review Board.... Before making its determination, the Disability Review Board shall hold a hearing if requested by the Participant, the Administrator, or the Retirement Administrator, and shall obtain a written opinion of the Medical Advisory Board with regard to the nature, cause, degree of permanence, and effect of the alleged disability.

After appellant's hearing before the Disability Review Board, the Board issued its determination. The Board's decision in its entirety follows:

Disability Review Board
Case #137

Henry Tron—Firefighter
Administrative Session—June 29, 1983

At the request of the Fire Department the Medical Advisory Board reviewed the medical reports on Firefighter Tron to determine his fitness for duty. The Board reviewed the medical reports pertaining to his "arthritic condition" from the County Consultant and his treating physician. On the basis of the data submitted the Board recommends disability retirement as a result of the arthritis which is unrelated to his occupation as a Firefighter. (See attached Findings of Facts for details).

The Disability Review Board considered the Findings of Fact and the medical reports and determined that Firefighter Tron is disabled within the meaning of the Fire Service Pension Plan and that his disability is non-service connected due to 'severe arthritis'.

| Date | William R. Brown, Jr., Chairman |
| --- | --- |
| | Mary Godfrey, Personnel Officer |
| | Lt. Col. Thomas Davis, Police Dept. |

The Disability Review Board ostensibly believed that the Medical Advisory Board's written opinion served as the Findings of Fact. They are mistaken. As the Plan clearly provides, it is the Disability Review Board which makes all disability determinations.

Not only what a board decides, but also how it decides is crucial:

The purpose of findings by an administrative agency are to aid or facilitate, or provide the basis for, judicial review. Such findings are essential, and necessary to

permit the court properly to review a decision or order, and the absence of findings precludes adequate judicial review. Findings are needed to aid a court in determining whether there is sufficient evidence to support an agency decision, and whether the facts offer a reasonable basis for the order entered, and whether it is based on a proper principle.

Moreover, such findings are necessary to assure that the administrative agency has acted in accordance with the law to insure careful administrative consideration, to protect against careless and arbitrary administrative action, to avoid judicial usurpation of administrative functions, and to restrain the agency within the bounds of its jurisdiction.

In addition, a purpose of administrative findings is to apprise the parties with respect to the reason for the administrative action as an aid to them in deciding whether additional proceedings should be initiated and, if so, on what grounds. Thus, administrative findings have been held to be necessary to assist the parties in planning their cases for rehearing and judicial review.

73A C.J.S. *Public Administrative Law and Procedure* § 143 (1983).

In *Baker v. Board of Trustees*, 269 Md. 740, 747, 309 A.2d 768 (1973), the Court of Appeals stated the importance of sufficient findings of fact by administrative agencies:

This is no more than a recognition of the fundamental right of a party to be apprised of the facts relied upon by the agency, *Blue Bird Cab Co. v. Department of Employment Security*, 251 Md. 458, 466, 248 A.2d 331, 335 (1968) and, even in the absence of a statutory provision, is frequently required by a court as an aid to judicial review, 2 Davis, *Administrative Law Treatise*, § 16.05 at 444–49 (1958); 2 Am.Jur.2d *Administrative Law* § 447 at 256 (1962), and cases cited.

■ In the case *sub judice*, the Disability Review Board gave no reasons for concluding that appellant's physical

condition "is unrelated to his occupation as a Firefighter." The Board's findings cannot be sustained without adequate reasons in the record. *United Steel Workers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984). Accordingly, we hold that the Board did not fulfill its quasi-judicial responsibility in the case *sub judice.* The Board is required to give reasons for its decisions. *Ocean Hideaway Condominium Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 515 A.2d 485 (1986).

We remand so that the Board can do a proper job as to both the evidence and fact finding.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR REMAND BY THAT COURT TO THE BOARD FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION;

COSTS TO BE PAID BY APPELLEE.