556 A.2d 736

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES**

v.

**Gregory A. SCRUGGS.**

**No. 1083, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 28, 1989.

Scott S. Oakley, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Nancy Black, Baltimore, and Susan Goering, for amicus curiae, American Civil Liberties Union of Maryland, Inc.

Barry C. Steel, Towson, for appellee.

Argued Before WILNER, KARWACKI, and POLLITT, JJ.

POLLITT, Judge.

This case confronts us with the question of whether the long-standing prohibition of polygraph evidence in Maryland

judicial proceedings also applies under the "relaxed" evidentiary standards of administrative proceedings. While the parameters of the rule are well-settled within our trial courts, we have been referred to no Maryland appellate decision squarely addressing the issue in the context of administrative proceedings. After an extensive review revealing grave doubts in the efficacy of the instrument which are still held in both the judicial and scientific communities, we conclude that polygraph evidence does not meet the standard, under the Maryland Administrative Procedure Act, of "competent" evidence. Consequently, unless and until the "state of the art" of polygraph testing improves to the extent that it is considered reliable and trustworthy, the rule of inadmissibility must extend to administrative proceedings as well.

The issue arose as a result of allegations by three inmates at the Maryland Correctional Institute for Women that they had, on different occasions, engaged in sexual relations with a male correctional officer at the institution. In the course of investigating these allegations, the Department of Personnel conducted a hearing, during which it received into evidence polygraph ("lie-detector") tests which had been administered to each of the three inmates. In a subsequent decision based, in part, on the results of these tests, the Department recommended that the charges be sustained.

An exceptions hearing was held before the Secretary of Personnel who sustained the charges for removal. The officer appealed to the Circuit Court for Baltimore County, challenging the admission into evidence, during the administrative proceedings of (1) the results of the polygraph tests given to the three inmates, and (2) the fact of his own refusal to submit to a polygraph examination. The circuit court, concluding that the polygraph evidence had in fact been "improperly and erroneously admitted," reversed the Secretary's order and remanded the matter to the Department of Personnel "for further administrative proceedings." This appeal ensued.

*Facts*

From 1984 until early 1987, Gregory A. Scruggs (appellee) was employed as a correctional officer at the Maryland Correctional Institute for Women (MCIW) with no significant disciplinary problems reported. In the early part of 1987, Crystal Wessell, an inmate at the institution, was diagnosed at the MCIW medical clinic as having contracted two sexually transmitted diseases: trichomonas and hemophilus. The two venereal infections are most generally transmitted by sexual contact, though they occasionally may be contracted through unsanitary habits and living conditions.

On further questioning by prison officials, Miss Wessell reported that she had engaged in sexual relations with Correctional Officer Gregory Scruggs in January of that year. In the course of reporting her own activities with Officer Scruggs, inmate Wessell also reported that two other MCIW inmates, Michelle Caviness and Eva Gilbert, also had sexual relations with Scruggs.

Shortly thereafter, an investigation was commenced by the Internal Investigative Unit of the Division of Correction. In early March of 1987, the three female inmates with whom Scruggs allegedly had sexual contact were individually interviewed by Sergeant Investigator Phyllis Merriweather. Each of these interviews was tape-recorded and transcribed.

Michelle Caviness stated that in 1986 Officer Scruggs had constantly made sexual "passes" toward her until, in June of that year, she consented to sexual intercourse with him in one of the cottages at the institution. The second inmate, Eva Gilbert, stated that in December of 1985, while she was on "cleaning duty" and other inmates were in their cells, she and Officer Scruggs engaged in consensual intercourse in the prison's recreation room. Finally, Miss Wessell, who initiated the allegations, stated that in January of 1987, Officer Scruggs entered her cell and closed the door, then took hold of her arm and said "come on." As he

continued to grasp her arm they engaged in intercourse. All three inmates denied any subsequent sexual encounters with Officer Scruggs.

In early April, 1987, the three inmates agreed to submit to polygraph examinations with regard to their statements. The administrator of the tests reported that the results indicated the statements had, in fact, been "truthful." Further, review of the MCIW employee schedules confirmed that Officer Scruggs' schedule would have made it possible for him to have had sexual intercourse with each of the inmates at the approximate times and places that the inmates alleged. Based on this information, Warden Johnson filed with the Department of Personnel charges seeking Scruggs' removal from State service.

At the subsequent administrative hearing before Arbitrator Thomas Curtis, appellee Scruggs strenuously objected to the admission of the polygraph test results,[1] based on their lack of reliability and on the fact that neither the administrator of the test nor any other expert was available to testify as to the procedures used in administering the test and interpreting the results, or the qualifications of the person who administered the test. The Arbitrator nevertheless admitted the tests, stating that:

> There's no reason to imagine any of the evidence admitted is conclusive. Just because something is produced by a machine ought not to make it more conclusive then [sic] human memory. But, it is an indication. It's evidence. It's a guideline. And for that purpose it will be admitted. So I will admit the polygraph, the results of the polygraph exam of the three inmates as evidence.

Sergeant Merriweather then testified that the polygraph results indicated

---

**1.** Appellant states in its brief that "there was no objection by [Mr. Scruggs] to this testimony." In point of fact, Mr. Scruggs objected strenuously, both prior to and following the admission of this evidence.

the statements that the inmates gave to me inmate Michelle Caviness, Eva Gilbert, and Crystal Wessell, they were truthful in their statements stating that they had engaged in sexual intercourse with Officer Scruggs.

Also admitted into evidence, over appellee's objections, were the written reports of the polygraph examination results for each of the three inmates.

In his September 8, 1987 Proposal for Decision, Arbitrator Curtis found "on the basis of the allegations of the three inmates, supported by circumstantial evidence of Mr. Scruggs' schedule during the days in question, and not adequately rebutted by Mr. Scruggs' denials," that management had shown "sufficient cause for removal of an employee in the classified service." In reaching this conclusion, the arbitrator relied, at least in part, on the polygraph results as substantive evidence, stating in his findings of fact that "the three inmate witnesses ... have passed a polygraph examination, which may add weight to their testimony." He further stated "it is improbable that the three inmates could have entirely fabricated their story of Mr. Scruggs' having one act of intercourse with each of the three, then coordinated their story with Mr. Scruggs' schedule and *carried the story through so as to outwit the polygraph....*"

The arbitrator concluded that while the three inmates did not appear to be "entirely blameless victims,"

[s]uffice it to say that there exists from the testimony the sense that even if Mr. Scruggs was not a predatory fox among lambs, he was periodically not as circumspect as he might have been, as a male correctional officer in a female institution, to the point that his conduct was inefficient, negligent and offensive, breaching discipline with female inmates in an unseemly manner, such as might well bring the classified service into public disrepute.

In reversing the Secretary's adoption of this decision, the circuit court concluded "that evidence regarding the results

of certain polygraph examinations and the failure to submit to such an examination was improperly and erroneously admitted into evidence during the course of the administrative proceedings in this case." In its appeal from that decision, the Department of Public Safety and Correctional Services contends that:

(1) Officer Scruggs failed to preserve for judicial review his objections to the admission of any of the polygraph evidence;

(2) Polygraph evidence is admissible in administrative hearings; and

(3) Even if the polygraph evidence was improperly admitted, it constituted harmless error and the Order of the Secretary was supported by substantial evidence.

I

*Preservation of Issues Raised in Administrative Proceedings*

Appellant's first contention is that Officer Scruggs failed to preserve for the circuit court's review his objections to the use of any of the polygraph evidence. Following the Arbitrators Proposal for Decision, Officer Scruggs filed a letter of "exceptions" to the Secretary of Personnel arguing that several evidentiary errors had been made during the course of the hearing. Scruggs' principle challenge was to the credibility accorded the inmates at the hearing, contending that:

In approaching [the question of credibility], we must weigh Officer Scruggs against three persons, all who are convicts, which immediately calls their credibility into question. A party presenting a person as a witness with such flawed credibility has the burden of bolstering that credibility.

\*      \*      \*      \*      \*      \*

*At best the Division of Correction has not shown any reason why the three inmates should be believed over Officer Scruggs.*

\*      \*      \*      \*      \*      \*

What we have then is a case presented by DOC on circumstantial evidence from three inmates who have credibility that is extremely suspect and questionable. The agency, bringing the charges, had the burden of sustaining the charges by a *preponderance of the credible evidence.* This they failed ... in all aspects.... [footnotes omitted]

Appellant notes that this letter did not contain any specific objections to polygraph evidence. It further asserts that because, for some unexplained reason, the transcript of the hearing, with all the objections raised by Mr. Scruggs therein, was not prepared until *after* the Secretary's final order, the Secretary "could not have been aware that any objection to the polygraph evidence had been made by Scruggs in the course of the hearing." Consequently, appellant argues that the Secretary did not have an adequate opportunity to discover and correct the error and any such objection could not be preserved for judicial review. Scruggs responds that an objection raised "at any time during the course of the administrative proceeding" should suffice to preserve that issue on appeal.

In the instant case, it is unnecessary to address the issue of whether the Secretary was in fact required to consider the objections made during the administrative hearing because the record shows that the issue of the polygraph evidence not only was raised by the appellee during the exceptions process, but also was in fact considered by the Secretary. The Secretary's awareness of the Arbitrator's reliance on the lie-detector tests is evidenced by the fact that, after considering all the aforementioned references made by the Arbitrator to the polygraph evidence, the Secretary still chose to adopt "all [of his] proposed findings of fact and proposed conclusions of law."

■ Even assuming that the Secretary was unaware of any objections raised at the administrative hearing, her knowledge of the arbitrator's reliance on the polygraphs, in conjunction with Officer Scruggs' explicit written excep-

tions to credibility afforded the inmates at the hearing, clearly sufficed to give notice of Officer Scruggs' objections to the use of polygraph evidence to prove the truth of the allegations.

Appellant secondly argues that Mr. Scruggs failed to preserve his argument concerning the arbitrator's improper consideration of his own refusal to take the polygraph test. The arbitrator, while indicating in his discussion that "no adverse inferences may properly be drawn" from such a refusal, apparently did attach enough significance to this point to state specifically in his findings of fact that "[d]uring the investigation Mr. Scruggs declined to take a polygraph test."

■ Appellant argues this issue was not properly preserved since, unlike appellee's objections to the inmates' polygraph tests, this objection was *never* raised before the administrative agency, including the hearings or "exceptions" stages. We agree. In fact, it was Officer Scruggs' own counsel who raised that issue at the hearing.

If that had been the only problem with polygraph evidence, we may have viewed the case differently. We are more concerned with the use of the results of the tests given the inmates.

## II

### *Admissibility of Polygraph Evidence in Administrative Proceedings*

The Maryland judiciary's distrust of polygraph evidence is well documented. Because of their "unreliability," Maryland courts exclude any evidence of polygraph tests, *Lusby v. State*, 217 Md. 191, 141 A.2d 893 (1958); *Mitchell v. State*, 51 Md.App. 347, 353, 443 A.2d 651, 655 (1982), *cert. denied*, 459 U.S. 915, 103 S.Ct. 227, 74 L.Ed.2d 180 (1982); *Robinson v. State*, 18 Md.App. 678, 308 A.2d 734 (1973), *see Johnson v. State*, 303 Md. 487, 513, 495 A.2d 1, 14 (1985), or *evidence based on them*, *Kelley v. State*, 288 Md. 298, 303, 418 A.2d 217, 220 (1980), even if the parties stipulate to the

admissibility of the test results. *Akonom v. State,* 40 Md.App. 676, 680, 394 A.2d 1213, 1216 (1978), *cert. denied,* 284 Md. 741 (1979). Even an unsolicited reference by a complaining witness to the fact that he or she took a polygraph test has been found to be prejudicial error, despite the judge's instruction to the jury to disregard, when the crucial issue at trial was the credibility of that witness. *Guesfeird v. State,* 300 Md. 653, 480 A.2d 800 (1984).

Appellant argues, however, that because "administrative agencies are not bound by the technical common law rules of evidence," *Dickinson–Tidewater v. Supervisor,* 273 Md. 245, 253, 329 A.2d 18, 24 (1974), polygraph evidence should be allowed in this setting as long as it "tends to prove the truth of the matter" at issue.

While administrative proceedings do allow more "flexible" evidentiary guidelines, Maryland courts have established some "boundaries" to this flexibility. The Court of Appeals has stated that:

> [W]hile administrative agencies are not bound to observe the "technical common law rules of evidence," they are not prevented from doing so *as long as the evidentiary rules are not applied in an arbitrary or oppressive manner that deprives a party of his right to a fair hearing.* [emphasis added]

*Tron v. Prince George's County,* 69 Md.App. 256, 262, 517 A.2d 113, 116 (1986), *(quoting Comm'n on Med. Discipline v. Stillman,* 291 Md. 390, 422, 435 A.2d 747 (1981). Simply stated, the administrative agency "must observe the basic rules of fairness as to parties appearing before them." *Dal Maso v. Bd. of Co. Comm'rs,* 238 Md. 333, 337, 209 A.2d 62, 64 (1965).

A general guideline as to what evidence may be "fairly" admitted under the relaxed standards of administrative proceedings is provided in Maryland Code (1984), § 10–208(b) of the State Government Article, which states:

(b) *Probative evidence.*—The agency may admit probative evidence that reasonable and prudent individuals commonly accept in the conduct of their affairs and give probative effect to that evidence.

Subsection (c) provides more specific grounds on which evidence may be excluded:

(c) *Exclusions.*—The agency may exclude evidence that is:

(1) incompetent;

(2) irrelevant;

(3) immaterial; or

(4) unduly repetitious.

Judicial review on these grounds is discussed in Section 10–215(g), which provides:

(g) *Decision.*—In a proceeding under this Section, the court may:

\* \* \* \* \* \*

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

■ The critical requirement to be gleaned from these statutes is that, whether in judicial or administrative proceedings, the evidence presented must be considered *"competent."* We believe that the Legislature clearly has indicated its intent that evidence which would be considered "incompetent," and for that reason inadmissible for substantive purposes in judicial proceedings, should also be excluded in proceedings before administrative agencies.

The question which arises, then, is whether we consider polygraph evidence so unreliable as to deem it "incompetent." In *Kelley v. State, supra,* the Court of Appeals specifically found that the trial court's admission of polygraph evidence was an abuse of discretion because it "implicitly conveyed evidence of a nature which this Court has *never held to be competent* and which was inherently prejudicial." 288 Md. at 303, 418 A.2d at 220. Maryland courts consistently have ruled that polygraphs fail to meet the standard required of scientific evidence in judicial proceedings; that before a scientific opinion will be received as evidence at trial, the basis of that opinion must be shown to be generally accepted as *reliable* within the expert's particular scientific field. *Reed v. State,* 283 Md. 374, 381, 391 A.2d 364 (1978).

The first Maryland case squarely to address the question of the admissibility of the results of a lie detector test at trial was *Rawlings v. State,* 7 Md.App. 611, 256 A.2d 704 (1969). There, we adopted the reasoning of the Supreme Court of New Hampshire in *State v. LaForest,* 106 N.H. 159, 207 A.2d 429 (1965), where that Court said:

Polygraph and scientific tests to determine deception are familiar investigative devices in criminal investigation and are employed generally in industry and government for various purposes. Nevertheless the results of these tests have been rejected by the courts as evidence of guilt or innocence of the accused by the overwhelming weight of judicial authority on the grounds that these tests have not yet attained sufficient scientific acceptance as an accurate and reliable means of ascertaining truth or deception. [citations omitted]

*Id.,* 7 Md.App. at 614, 256 A.2d at 706.

As we observed in *Johnson v. State,* 31 Md.App. 303, 307, 355 A.2d 504, 507 (1976), "[t]he reason for excluding the *results* of a polygraph examination is the questionable reliability of such evidence." (emphasis in original) On another occasion, we were in agreement with the Supreme Court of Michigan, where that court held:

The fact is, that the results of most polygraph examinations are not verified by extrinsic evidence, and there are no scientific studies performed by other than polygraphers which purport to demonstrate scientific means of verification. This factor alone has been responsible for much of the anti-polygraph sentiment outside the polygraph profession.

*Akonom v. State, supra,* 40 Md.App. at 684, 394 A.2d 1213 (*quoting People v. Barbara,* 400 Mich. 352, 255 N.W.2d 171, 189 (1977)). This Court concluded that "[i]n any event, acceptance among polygraphers is clearly not the 'general acceptance' required under the *Frye–Reed* [2] test and acceptance among psychologists and psysiologists [sic] 'cannot be demonstrated because such acceptance does not exist.' " (citations omitted) *Id.* Appellant has cited nothing to persuade us that this statement is not as true today as it was in 1978.

### III

### *Harmless Error*

■ Appellant finally contends that even if the polygraph evidence was erroneously admitted, this was harmless error and the order of the Secretary was otherwise supported by substantial evidence. Having concluded that the admission was in error, we believe Officer Scruggs was in fact severely prejudiced by this evidence.

In determining whether evidence of a lie detector test was so prejudicial that it denied the defendant a fair trial, courts have looked to a variety of factors, including: whether the reference to a lie detector was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; whether the witness making the reference is the principal witness upon whom the entire prosecu-

---

**2.** *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), and *Reed v. State, supra.*

tion depends; whether credibility is a crucial issue; whether a great deal of other evidence exists; and, whether an inference as to the result of the test can be drawn. *Guesfeird v. State, supra*, 300 Md. at 659, 480 A.2d at 803. No single factor is determinative in any case. The factors themselves are not the test, but rather, they help to evaluate whether the defendant was prejudiced. In cases where the crucial issue is the credibility of witnesses, a mere reference to polygraph evidence, even without disclosing the actual results, may be sufficiently prejudicial to warrant a reversal: "The jury, required to choose between two directly conflicting stories . . ., cannot be presumed to have been unaffected by evidence that one of the witnesses had successfully passed a lie-detector test prior to his testimony." *Id.*

The overriding question in this case was the credibility of the three inmates as opposed to that of appellee. Under these circumstances, the polygraph evidence most certainly was not harmless.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.